**Rosario ZAMORANO, Appellant,**

v.

**The STATE of Texas.**

No. 1442–00.

Court of Criminal Appeals of Texas, En Banc.

Sept. 11, 2002.

Suzanne Kramer, San Antonio, for Appellant.

Daniel Thornberry, Assistant District Attorney, San Antonio, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, JOHNSON, and HOLCOMB, JJ., joined.

Appellant was charged with Driving While Intoxicated ("DWI") in October 1995, but his case was repeatedly reset and lingered on the docket for almost four years. Appellant twice filed speedy trial motions, which the trial court heard and denied. The court of appeals affirmed the trial court's ruling.[1] We granted review in this case to determine whether the court of appeals correctly applied the federal constitutional speedy trial factors set out in *Barker v. Wingo*.[2] We conclude that, un-

---

1. *Zamorano v. State*, 21 S.W.3d 664 (Tex. App.-San Antonio 2000).

2. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
 We granted review on the following issues:
 1) Whether the court of appeals has decided an important question of law in conflict with the decisions of the Supreme Court of the United States, in that the court held that a defendant waives his claim that he was denied a speedy trial where he does not assert the claim with immediacy, and that the defendant must show more than "some" prejudice when asserting he has been denied his right to a speedy trial; and
 2) Whether the court of appeals has sanctioned a departure from the accepted and usual course of judicial proceedings by the trial court, so as to call for the exercise of the Court of Criminal Appeals power of supervision, in that the court of appeals affirmed the trial

der the applicable United States Supreme Court precedent, appellant was denied his right to a speedy trial. Therefore, we reverse the trial court's judgment of conviction.

## I.

On October 20, 1995, appellant was charged with DWI—Open Container. He posted bail that same day and made his first court appearance on November 13, 1995. His case was reset to December 13. He appeared on that date. And on December 14, and again on January 16, 1996, when his case was reset for a jury trial. On June 3, 1998, after his case was reset six more times over the subsequent two and one-half years, appellant finally moved to set aside the indictment, arguing that he had been denied his right to a speedy trial. At an August 21, 1998 hearing—in which appellant's counsel listed each of the prior appearances, appellant testified to how he had been prejudiced, and the State stood silent—the trial judge denied the motion. Appellant continued to appear in court for additional resets. After two more resettings in two months, appellant filed a motion to reconsider his original speedy trial motion.

Despite the filing of appellant's motion to reconsider on October 19, 1998, the trial court did not hear it until August 6, 1999. By then, appellant had appeared in court some fifteen times. Almost four years had passed since he was originally charged with DWI. After the trial judge again denied appellant's speedy trial motion, appellant then pleaded no contest.

Appellant appealed the denial of his speedy trial motion. The court of appeals affirmed and held that the trial court did not err in denying appellant's motion for speedy trial and his motion to reconsider.[3] The court of appeals reasoned that "[a]lthough the State failed to introduce any reason for the delay, [appellant] failed to assert his right for over two and one-half years, and he failed to show that he was prejudiced by the delay."[4]

## II.

■■■ The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial.[5] In addition, Article I, § 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial.[6] The Supreme Court has stated that, "On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all."[7] Thus, in *Barker v. Wingo*, the Court "qualified the literal sweep of the provision" by analyzing the constitutional question in terms of four specific factors:

court's clearly erroneous application of the law to the facts, placing an unconstitutional degree of burden on a defendant who attempts to assert his constitutional right to a speedy trial was violated.

**3.** *Zamorano*, 21 S.W.3d at 667.

**4.** *Id.*

**5.** *See Barker v. Wingo*, 407 U.S. at 515, 92 S.Ct. 2182; *Dickey v. Florida*, 398 U.S. 30, 37, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 377–78, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

**6.** Article 1.05 of the Texas Code of Criminal Procedure also provides that "[i]n all criminal trials the accused shall have a speedy public trial by an impartial jury."

**7.** *Doggett v. U.S.*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

1) "whether delay before trial was uncommonly long"; [8]
2) "whether the government or the criminal defendant is more to blame for that delay"; [9]
3) "whether, in due course, the defendant asserted his right to a speedy trial"; [10] and
4) "whether he suffered prejudice as the delay's result." [11]

The Texas constitutional speedy trial right exists independently of the federal guarantee, but this Court has traditionally analyzed claims of a denial of the state speedy trial right under the factors established in *Barker v. Wingo*.[12]

▆▆▆ Under *Barker v. Wingo*, courts must analyze federal constitutional speedy trial claims by first weighing the strength of each of the above factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." [13] None of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." [14] Instead, they are related factors, which must be considered together along with any other relevant circumstances.[15] No one factor possesses "talismanic qualities," thus courts must "engage in a difficult and sensitive balancing process" in each individual case.[16]

▆▆▆ In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components.[17] Because appellant lost in the trial court on his speedy trial claim, we must presume the trial court resolved any disputed fact issues in the State's favor, and we must also defer to the implied findings of fact that the record supports.[18] Because most of the facts are undisputed, the primary issue in this case involves the legal significance of these facts to appellant's claim.[19]

## III.

### A. Length of the Delay

▆▆▆ The length of the delay between an initial charge and trial (or the defendant's demand for a speedy trial) acts as a "triggering mechanism." [20] Unless the delay is presumptively prejudicial, courts need not inquire into examine the other three factors.[21] Given the "imprecision of

**8.** *Id.* (citing *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182).

**9.** *Id.*

**10.** *Id.*

**11.** *Id.*

**12.** *See Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.1992); *see also Deeb v. State*, 815 S.W.2d 692, 704 (Tex.Crim.App.1991); *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex.Crim.App.1988); *Hull v. State*, 699 S.W.2d 220, 221–224 (Tex.Crim.App.1985).

**13.** 407 U.S. at 530, 92 S.Ct. 2182.

**14.** *Id.* at 533, 92 S.Ct. 2182.

**15.** *Id.*

**16.** *Id.*

**17.** *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim.App.1999).

**18.** *Id.*

**19.** "The balancing test as a whole ... is a purely legal question. Legal questions are reviewed *de novo*." *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997).

**20.** *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182.

**21.** *Id.*

the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."[22] However, the Supreme Court has explained that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."[23] If the accused shows that the interval between accusation and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, a court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.[24] This second inquiry is significant to the speedy trial analysis because "the presumption that pretrial delay has prejudiced the accused intensifies over time."[25] Thus, any speedy trial analysis depends first upon whether the delay is more than "ordinary"; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant.

 In this case, the State conceded (and the court of appeals agreed) that the delay between appellant's arrest and the hearing on his speedy trial motion in this plain-vanilla DWI case, a delay of two years and ten months, was sufficiently lengthy to trigger the court of appeals' analysis of the other *Barker* factors. We agree.[26] Furthermore, the nearly four-year delay between appellant's October 20, 1995, arrest and his August 6, 1999, plea hearing clearly triggers analysis of the other *Barker* factors. Because the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the claim, this factor—in and of itself—weighs heavily against the State.

## B. Reasons for the Delay

 "[R]elated to length of delay is the reason the government assigns to justify the delay."[27] We assign different weights to different reasons. For example,

> [a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government ... [while a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.[28]

Although a finding of "bad-faith delay" renders relief almost automatic, a finding of mere negligence will not become "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him."[29]

 The court of appeals found that this factor weighed against the State "[b]ecause the record is silent regarding the reason for the delay," but the court of appeals did not weigh it heavily because

---

**22.** *Id.* at 530–31, 92 S.Ct. 2182.

**23.** *Id.* at 531, 92 S.Ct. 2182.

**24.** *Doggett v. U.S.,* 505 U.S. at 652, 112 S.Ct. 2686.

**25.** *Id.*

**26.** *See Harris v. State,* 827 S.W.2d at 956 (recognizing that courts generally hold that

any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis).

**27.** *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. 2182.

**28.** *Id.*

**29.** *Doggett,* 505 U.S. at 656–57, 112 S.Ct. 2686.

"no evidence exists that the State deliberately attempted to delay the trial." [30] We agree that this factor weighs against the State. The docket sheet shows that twenty-two resets occurred between November 13, 1995 (the date of appellant's first appearance) and August 6, 1999 (the date of the denial of the motion to reconsider the motion for speedy trial, and plea of no contest).

As the court of appeals notes, and appellant candidly admits, he announced "not ready" on July 19, 1996. One reset is therefore clearly attributable to appellant's conduct.[31] But that reset was apparently for three days, until July 22, 1996, to give appellant time to file written pretrial motions in limine, to suppress evidence, and to request a list of the State's witnesses. Still, the State gave no reason for the remainder of the delay that the court of appeals considered—the delay "between the date Zamorano announced 'not ready' and the date his motion for speedy trial was heard—a delay of approximately two years." And more strikingly, the State gave no reason for the *continued* delay— the additional year between the date appellant's original motion for speedy trial was denied and the date that the trial court rejected his motion to reconsider.[32] This was not a complex case; it was a simple DWI, and yet the State had no explanation for why it could not try the case for four years.

■ We disagree that the record is entirely silent concerning the reasons for the delay. The docket sheet entry for January 14, 1999 states: "Transfer to CC # 2 (Video is in Spanish)" and "Set for Motions & Trial 2-18-99." This entry supports trial counsel's explanation, at the speedy trial hearing, that the delay arose partially because the prosecutors did not understand appellant, who spoke Spanish. Had appellant spoken an unusual language, the difficulty in finding an interpreter would be understandable and support additional delay, but Spanish speakers and interpreters in San Antonio, Texas, are hardly rare. While no evidence indicates that the State deliberately attempted to delay the trial, the fact that the State could not evaluate appellant's Spanish-speaking video for more than three years, until the case was transferred to another court, constitutes official negligence. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." [33] We find that this

---

30. *Zamorano*, 21 S.W.3d at 666–67.

31. One could argue that, in certain circumstances, a single announcement of "not ready" by defense counsel automatically waives the entire time period and all of the delay before that announcement. Such a rule, however, would make a defendant's right to a speedy trial forfeitable due to unforeseeable events. Medical, personal, and professional problems or conflicts could temporarily make either the defense or prosecution unready to proceed on a specific trial date. Although announcing "not ready" at a particular trial setting might show either the State's or defense counsel's lack of preparedness, lack of readiness at one setting does not automatically apply to all prior time periods. Such a rule would be unfair to both the defense and State.

32. *Cf. Harris*, 827 S.W.2d at 956 (no denial of a speedy trial where the state's delay was due to the case's complexity; "it is apparent from the record that the prosecution's case was in fact quite complicated and doubtlessly required a great deal of preparation. Indeed, our examination of the record shows that the State presented 51 witnesses and 161 exhibits during appellant's five-month trial").

33. *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686.

factor weighs against the State—while not heavily, not lightly either. Furthermore, this factor weighs more heavily against the State because, even after the case was transferred to another court for a Spanish-speaking prosecutor to assess appellant's DWI video, the case *still* lingered on the docket for another six months.

## C. Assertion of the Right

According to the Supreme Court, the nature of the speedy trial right "makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants."[34] Of course, the defendant has no duty to bring himself to trial; that is the State's duty.[35] This does not mean that the defendant has *no* responsibility to assert his right to a speedy trial.[36] Whether and how a defendant asserts his speedy trial right is closely related to the other three factors because the strength of his efforts will be shaped by them.[37] Therefore, the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in

determining whether the defendant is being deprived of the right.[38] Conversely, a failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial.[39]

Appellant filed his motion for speedy trial on June 3, 1998, about two and one-half years from the date of his arrest.[40] The record is unclear whether appellant objected to the resets before that date. During the two hearings, defense counsel argued that appellant had announced "ready" on all dates, save the one "not ready" mentioned above. The court of appeals discounted appellant's second try for a speedy trial because "there [was] no indication that he requested an immediate setting of the motion to reconsider," and held that appellant's "delay and lack of persistence in asserting his right to a speedy trial weigh[ed] against him." [41]

We disagree that the assertion-of-the-right factor weighs against appellant. It is true that appellant's initial motion was tardy. This late assertion, had no subsequent motion been filed, might well have undercut his Sixth Amendment claim.[42] But appellant's second attempt to seek a

---

34. *Barker*, 407 U.S. at 527, 92 S.Ct. 2182 (footnotes omitted).

35. *Id.*

36. *Id.*

37. *Id.* at 531, 92 S.Ct. 2182.

38. *Id.* at 531–32, 92 S.Ct. 2182.

39. *Id.* at 532, 92 S.Ct. 2182.

40. Appellant's motion was framed as a motion to dismiss. This fact potentially weakens appellant's case, as "a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex.App.-Fort Worth 1997, no pet.). But "[e]ach case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Phil-*

*lips v. State*, 650 S.W.2d 396, 401 (Tex.Crim. App.1983). At the hearing on appellant's motion, defense counsel stated, "And I believe that we've met all the requirements needed for the Court to grant us a speedy trial, and we ask you to do that." Given the circumstances, the motion to dismiss was a means of alerting the trial court and the State of the delay and appellant's lack of acquiescence to it, and not necessarily an attempt to escape trial completely.

41. 21 S.W.3d at 667.

42. Although Judge Womack's adage, "Never tried, never convicted," *see infra* at 657 (Womack, J., dissenting), may be true as a general proposition, this case proves the exception to that rule. Here, the trial judge may well have been within his discretion in denying appellant's first speedy trial motion, but surely, once appellant had clearly assert-

speedy trial, which came less than two months after the trial court denied his initial motion, evidenced his persistence.[43] This is not a case where appellant never asked for a hearing.[44] Nor is this a case in which evidence shows a defendant's affirmative desire for *any* delay.[45] Appellant's repeated assertion weighs in his favor.

## D. Prejudice Caused by the Delay

 "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[46] The Supreme Court has identified three such interests:

1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired.[47] Although the last type of prejudice is the most serious,[48] a defendant's claim of a speedy trial violation need not necessarily demonstrate prejudice to his ability to present defensive matters.[49] Appellant was on bail pending his trial and has never claimed that his defense was specifically impaired. The first and third interests are not strongly implicated. The second clearly is. Appellant testified regarding his anxiety and concern:

ed his right to a speedy trial, he should have been given one, or at least a good reason why this simple DWI case could not be brought to trial for another full year.

Furthermore, Judge Womack's concern about the harm caused to the public by someone who is out on pretrial bail for four years is yet another reason why the interests of both the public and the defendant coalesce in requiring a speedy trial. *See United States v. Gonzales*, 897 F.2d 1312, 1315 (5th Cir.1990) (federal speedy trial act is designed to ensure a defendant's Sixth Amendment right to a speedy trial, and to reduce the danger to the public from prolonged periods of the defendant's release on bail).

**43.** *See, e.g., Hardesty v. State*, 738 S.W.2d 9, 11(Tex.App.-Dallas 1987, pet. ref'd) (finding assertion-of-right factor weighs in favor of appellant where record reflects that appellant filed three dismissal motions, eight, eleven and fourteen months, respectively, after his arrest); *cf. Johnson v. State*, 975 S.W.2d 644, 651 (Tex.App.El Paso 1998, pet. ref'd) ("The failure to invoke the right earlier does not amount to waiver, but because Appellant did not persistently assert her right to a speedy trial, we did not weigh this factor heavily in her favor").

**44.** *Cf. Cook v. State*, 741 S.W.2d 928, 940 (Tex.Crim.App.1987) (assertion-of-right factor weighs against appellant where "there is no evidence beyond the two motions for speedy trial filed with the district clerk that appellant asserted his right to a speedy trial by requesting hearings to present evidence on the matter"), *vacated and remanded on other grounds*,

488 U.S. 807, 109 S.Ct. 39, 102 L.Ed.2d 19 (1988).

**45.** *Cf. County v. State*, 668 S.W.2d 708, 711–12 (Tex.Crim.App.1984) ("The record shows that appellant and his counsel agreed to a large part if not all of the delay in that they wished to see appellant's co-indictee tried first").

**46.** *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. 2182.

**47.** *Id.*

**48.** *Id.*

**49.** Appellant's failure to cite any specific "demonstrable" prejudice—that is, impairment of his ability to present potential defenses—does not doom his claim, since excessive delay can compromise a trial's reliability in unidentifiable ways. *Moore v. Arizona*, 414 U.S. 25, 26–27, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (per curiam). "[T]hough time can tilt the case against either side ... one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett*, 505 U.S. at 655–56, 112 S.Ct. 2686.

Q Mr. Zamorano, were you arrested for a D.W.I. back in October of 1995?

A Yes.

Q And did you hear me telling the Court all the court dates that we had been present for?

A Yes.

Q And is it true that you have been present in court on all of those dates?

A Yes.

Q And what do you do for a living, sir?

A I'm a cement finisher, concrete finisher.

Q And when you've had to come to these court dates, have you missed work?

A I've had to work. Right now I was going to work. I was going to work now.

Q And if you don't work, do you get paid?

A No.

Q So you've had to miss working on at least eleven days because of this case?

A Yes, the whole time—the whole time I've missed.

Q And you didn't get paid for any of those days?

A No.

Q And it's true that you're out on a bond right now; is that correct?

A Yes. Yes.

* * *

Q How often do you have to report to the company?

A Every Tuesday—On Tuesdays.

Q And when you have to report to the bond company, do you also miss work?

A No, I have work, but I've gone at 9, 8 at night, even as late as 10 at night.

Q So you have to go after work?

A From the work I go to report.

Q And has this case caused you anxiety?

A Yes, a lot of desperation I've had. Yes.

Q Have you been worried about what was going to happen every time you've come to court?

A Yes. Yes.

Q Can you tell the Judge ho—how it's affected you that you've had to come back to court now for three years?

A Well, it's like—it's like affected me a lot because they give me 120 per day and I don't earn, I lose. Well, I can't—can't—can't go, because like last night they called me and now I can't go.

Q And how does that make you feel? Are you stressed out, worried?

A Yes, yes like thinking about what was going to go on tomorrow thinking—thinking—I wanted to receive something from her—from her [defense counsel]. I wanted to see her, but she was working here in the center of town. But I got out late— I got out late and I could not see her.

The State did not cross examine appellant, put on any evidence, or argue against the motion.

The court of appeals—relying on the fact that "the only evidence [appellant] offered to demonstrate his anxiety was his testimony"—found that appellant's testimony was too little and too late to support a showing of prejudice. The court of appeals said: "given [appellant's] failure to pursue a motion for speedy trial for over two and one-half years, we infer that the

main source of his anxiety was his fear of conviction, which is not a proper consideration."[50] We cannot agree with this inference. In *Klopfer v. North Carolina*, the Court noted:

> The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go "whithersoever he will." The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the "anxiety and concern accompanying public accusation," the criminal procedure condoned in this case ... clearly denies the petitioner the right to a speedy trial ...[51]

In *Barker*, the Court added that, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."[52] Appellant testified—in Spanish—that he lost $120 per day that he did not work. When appellant testified, he had missed at least eleven days of work due to court appearances. That is a minimum of $1,320 worth of personal prejudice to a day laborer.[53] It is true that the only evidence appellant offered to demonstrate his anxiety was his own testimony. How-ever, because the State did not challenge appellant's testimony, it is at least some evidence of the type of "anxiety" that the Supreme Court considers under the prejudice prong of *Barker*.[54] The court of appeals dismissed the main source of appellant's anxiety as "his fear of conviction."[55] Even assuming that the court of appeals correctly characterized the source of appellant's anxiety, the sword of Damocles weighs no less merely because the source of anxiety is appellant's fear of conviction and the resultant as-yet-unknown punishment. Here, the length of the delay itself supports an inference of actual prejudice, as does appellant's testimony of the direct economic costs, the four years' worth of disruptions to his job, and the weekly requirement to report to the bonding company.[56]

### E. Balancing

We find that all four factors weigh in favor of relief. First, the length of the initial delay—two years and ten months—was presumptively prejudicial, and the additional year of delay after the denial of appellant's original speedy trial motion was clearly prejudicial. Second, the delay was the result of the State's negligence. Third, appellant twice asserted his right to a speedy trial. Finally, appellant produced evidence of prejudice which the State failed—indeed did not attempt—to

**50.** 21 S.W.3d at 667.

**51.** 386 U.S. at 221–22, 87 S.Ct. 988 (footnote omitted).

**52.** 407 U.S. at 532, 92 S.Ct. 2182.

**53.** *See, e.g., State v. Burckhardt*, 952 S.W.2d 100, 104 (Tex.App.-San Antonio 1997) (prejudice established, in part, where appellant showed disruptions in his work and income stream).

**54.** *Cf. Schenekl v. State*, 996 S.W.2d 305, 314 (Tex.App.-Fort Worth 1999) ("Though appel-lant has established [via his testimony that "the delay in bringing him to trial put him on 'pins and needles' the whole time"], and the State has failed to rebut, the anxiety element, it is not enough to cause the prejudice prong to weigh in appellant's favor."), *aff'd*, 30 S.W.3d 412 (Tex.Crim.App.2000).

**55.** 21 S.W.3d at 667.

**56.** *Doggett*, 505 U.S. at 655–56, 112 S.Ct. 2686.

rebut. At no point did the State challenge the merits of appellant's claim to a speedy trial. The State sat silent on all fronts; it neither offered any evidence, nor cross-examined appellant, nor made any legal argument in the trial court to justify the delay.[57] Because the State's negligence caused a delay which was nearly six times as long as the delay generally considered sufficient to trigger judicial review and it did not rebut, explain, or minimize the presumption of prejudice, appellant is entitled to relief.[58] Even if appellant's actual prejudice was minimal, "[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority."[59] This DWI prosecution may have been of little moment to the State, but it mattered greatly to appellant.[60] Because we find that appellant's constitutional right to a speedy trial was violated, we reverse appellant's conviction and remand the case to the trial court for entry of a judgment of acquittal.

KELLER, P.J., filed a dissenting opinion in which WOMACK and KEASLER, JJ., joined.

WOMACK, J., filed a dissenting opinion in which KELLER, P.J., joined.

HERVEY, J., is not participating.

KELLER, P.J., filed a dissenting opinion in which WOMACK and KEASLER, JJ., joined.

I cannot agree with the Court's conclusion that appellant has been deprived of his right to a speedy trial. We have explained that the "essential ingredient of the Sixth Amendment's speedy trial guarantee is 'orderly expedition and not mere speed.'"[1] To determine whether this orderly expedition has been denied, the courts are called upon to balance four factors: (1) the length of delay, (2) the reasons for delay, (3) the defendant's assertion of the right, and (4) prejudice suffered by the defendant as a result of the delay.[2] We view these factors through a bifurcated prism: we defer to the trial court on the factual components of the issue and review *de novo* the legal components.[3]

I agree that the delay in this case is sufficiently long to trigger an analysis of the remaining *Barker* factors, but I disagree with the Court's conclusion that the length of delay counts *heavily* against the State. Because the defendant announced "not ready" on July 19, 1996, the delay between October 20, 1995 and that date should not count against the State at all. Absent any indication to the contrary, we should presume—in deference to the trial court's ruling—that this portion of the de-

**57.** See Santallan v. State, 922 S.W.2d 306, 308 (Tex.App.-Fort Worth 1996, pet. ref'd) (accepting as evidence appellant's allegations that he did not receive his trial until more than two years after he first requested a speedy trial because the allegations were uncontested at the speedy trial hearing).

**58.** See Doggett, 505 U.S. at 657–58, 112 S.Ct. 2686.

**59.** Id. at 657, 112 S.Ct. 2686.

**60.** "The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it." Doggett, 505 U.S. at 657, 112 S.Ct. 2686.

**1.** State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim.App.1999).

**2.** Id.; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**3.** Munoz, 991 S.W.2d at 821.

lay was attributable to the defendant's lack of readiness.[4]

Moreover, while the record shows that a number of resets occurred that were not requested by the defendant, the record does not reflect that appellant objected to any of these resets until filing his speedy trial motion on June 3, 1998. The record is not unclear—it does not show any objection by appellant—but if it were unclear, the ambiguity should be resolved against appellant, because the trial court ruled against him, and we should assume that he agreed to the resets. Since, at the least, appellant did not complain about the resets, the time period allowed should not count heavily against the State. Hearing the motion two and a half months later, on August 21st, was not an unduly lengthy time. That leaves fourteen months until the trial occurred—or a year, if one counts from the time the motion to reconsider was filed. Although sufficient to trigger a *Barker* analysis, this time period is hardly the overwhelming amount of time that courts have found to weigh heavily against the government, as eight months to a year has generally been considered the minimum to trigger a speedy trial analysis in the first place.[5]

Concerning the State's reasons for delay, the Court infers that the delay was occasioned by the prosecutors' inability to comprehend the Spanish videotape. But another reason is apparent from the record: plea negotiations. Appellant pled no contest immediately after the trial court heard the speedy trial motion a second time (October 1999), and the parties informed the trial court that they had entered a plea agreement. Although the record does not reflect how extensive the negotiations were or when they occurred, the timing of the plea is evidence that at least some time was spent on plea negotiations. We have previously recognized that engaging in plea negotiations is a valid reason for delay and does not weigh against the State.[6] And because the record does not show how much of the delay was for plea negotiations as opposed to some other purpose, it is problematic to arrive at the conclusion that any of the delay weighs against the State—much less that it weighs heavily.

As for the assertion-of-the-right factor, the defendant waited approximately two-and-a-half years from the time he was charged to file his speedy trial motion. Although he filed a motion to reconsider two months after his original motion was

---

**4.** In footnote 31, the Court argues that a single announcement of "not ready" should not *automatically* waive the period of delay occurring before the announcement. The Court points out that unforeseeable events—such as medical, personal, or professional problems—could temporarily make the defense unable to proceed on a specific trial date. I agree. My point is not that an announcement of "not ready" automatically and inflexibly waives the preceding time. My point is that we should give deference to the trial court's resolution, and that *absent an indication to the contrary in the record*, we should assume that the defendant was not ready prior to his announcement. If the defendant was ready before and became unready due to an unforeseeable event, then the defendant should ensure that the record reflects those facts, so that an appellate court can take those into account without engaging in speculation.

**5.** *See Doggett v. United States*, 505 U.S. 647, 657–658, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (one year generally considered the threshold for speedy trial claim; a six year delay attributable to the government—out of an eight-and-a-half year total delay—was considered especially egregious); *Knox v. State*, 934 S.W.2d 678, 681 (Tex.Crim.App.1996) (stating that an eight-month delay is generally sufficient to trigger a speedy trial claim).

**6.** *Munoz*, 991 S.W.2d at 824–825.

denied, the record does not reflect that he tried to procure a hearing on the motion any earlier than the hearing actually held in October of 1999. Given that a year elapsed between the time the motion to reconsider was filed and the time it was heard, the defense's conduct can hardly be considered a "persistent" assertion of the right.

Finally, appellant has failed to show significant prejudice. Because he was on bail, appellant did not suffer oppressive incarceration because of the delay. And he has never asserted that his defense was impaired in any way. His claim to prejudice relates to anxiety suffered and the loss of some income from missing work. Although appellant gave some testimony at the August 21, 1998 hearing regarding anxiety that he suffered, that testimony is general and does not indicate that the anxiety suffered is any more than would ordinarily flow from a criminal prosecution. The Court says that the length of delay itself supports an inference of actual prejudice. But holding that one of the *Barker* factors standing alone can ever support an inference of actual prejudice is contrary to *Barker*. Moreover, even if one could infer actual prejudice from the existence of one *Barker* factor, the length of delay in this case would not support such an inference.

And finally, although appellant did suffer financially from having to appear in court a repeated number of times, he eventually obtained a very favorable deal from the State: fifteen days confinement and a $500 fine. The minimum term of confinement for the charged offense, driving while intoxicated with an open container in the car, was six days while the maximum term of confinement was 180 days, and appellant faced a maximum possible fine of $2,000.[7]

So, the delay attributable to the State was not particularly long, the delay was due at least in part to plea negotiations, appellant's assertions of the right to a speedy trial were tardy and infrequent, and the prejudice suffered was minimal. A balancing of the four *Barker* factors leads me to conclude that appellant was not deprived of his constitutional right to a speedy trial.

I respectfully dissent.

WOMACK, J., filed a dissenting opinion in which KELLER, P.J., joined.

What does the Court's opinion say? It may say either, or both, of two things.

The first, and I hope only, thing the Court says today is that, as a matter of law, the State cannot justify years of delay in trying a case by saying that a prosecutor and a court in Bexar County couldn't, or wouldn't, interpret words spoken in Spanish on a videotape. While such a justification may be disappointing and surprising, I would not say it necessarily amounts to a constitutional violation.

The other thing the Court might be understood to say is that a defendant can make out a constitutional violation if the only detriment he can show is that he was worried about the pending charge. If that is enough to amount to a constitutional violation, then delays *per se* will be constitutional violations if they were not occasioned by the defendant.

Surely the adage I learned in law school is still true: "Never tried, never convicted." That is, delay normally helps the defendant. (After law school, I learned an important qualification: the adage applies only if the defendant is on bail. If the defendant is in jail awaiting trial, punishment has effectively started without a conviction.)

7. *See* TEX. PEN. CODE § 12.22 & § 49.04(c) (1996).

The appellant was on bail. He sought a delay, and got one for three months, when the court accepted his announcement of "not ready." This suggests that his concern about a speedy trial did not mature until he thought he had a colorable claim for dismissal. It is almost judicially noticeable that a speedy trial is the last thing most speedy-trial movants want, if they are admitted to bail.

The harm to the public of having someone who drinks and drives (which I understand to be an unquestioned fact) on bail for four years might be more grave than any harm that the appellant alleged.

I agree with much of the Presiding Judge's opinion, *ante.* I respectfully dissent.