# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00345-CR

**Guadalupe Padilla, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. 952802, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Guadalupe Padilla guilty of aggravated sexual assault of a child, for which it assessed punishment at imprisonment for thirty-seven years. Tex. Pen. Code Ann. § 22.021 (West 2003). Appellant contends he was denied his constitutional right to a speedy trial, his appointed counsel was erroneously removed, and his request for different counsel was erroneously denied. We will overrule these contentions and affirm the conviction.

In October 1994, appellant was on parole from a prison sentence for burglary and living in Austin with Gina Gomez and her eleven-year-old daughter. On the night of October 22, while Gomez was at work, appellant sexually assaulted the girl. When Gomez got home, the girl told her what had happened. Gomez confronted appellant and told him she was going to call the police. Appellant left the house that night never to return. Based on Gomez's complaint, a municipal court warrant for appellant's arrest was issued on November 4, 1994. The municipal court

warrant was superseded by a district court capias issued after a grand jury indicted appellant for aggravated sexual assault on June 6, 1995.

On December 9, 1994, appellant was arrested in San Antonio for parole violations. Documents in the record show that appellant was accused of violating the conditions of his parole by failing to report a change of address and by committing the aggravated sexual assault at issue. Apparently, no one in Austin was notified of the arrest. Appellant's parole was revoked in February 1995 after he waived a hearing, and he was returned to prison. Between February 1995 and May 2000, appellant was released on parole three more times. On one occasion, appellant was paroled to a residential facility for sex offenders because of the pending sexual assault charge. Following each release, appellant committed new parole violations resulting in his arrest and reincarceration. Although both the parole board and the institutional division were aware of the pending sexual assault charge, police and prosecutors in Austin were never informed that appellant was in custody. For their part, prosecutors appear to have been unaware of appellant's whereabouts and never placed a detainer on appellant while he was in prison. Finally, on May 3, 2000, while appellant was in custody in San Antonio on a parole violation warrant, the 1995 capias was executed and he was returned to Austin.

An attorney was appointed to represent appellant on May 5, 2000. Appellant was released on bond in November 2000. At a time not clear from the record, appellant was deemed not to be indigent and the appointed attorney ceased to represent him. Appellant never hired counsel. Appellant was rearrested in May 2001 after his bond was increased, and a new attorney was appointed to represent him. On November 16, 2002, appellant's new counsel filed a motion to

2

dismiss for want of a speedy trial. By that time, there had been approximately twenty-five agreed resettings of appellant's court case. The dismissal motion was overruled on January 25, 2002, following a hearing. Appellant's trial began three days later.

### *Speedy Trial*

The right to a speedy trial is constitutionally guaranteed. U.S. Const. amend. VI; Tex. Const. art. I, § 10. In determining whether an accused has been denied his constitutional right to a speedy trial, a court must consider the conduct of both the prosecution and the defendant in light of four factors: the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In reviewing the district court's ruling, we view the evidence in the light most favorable to the ruling but make our own de novo determination of the legal significance of the facts. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

***Length of delay.*** The parties agree that the delay in this cause should be measured from June 1995, when appellant was indicted for aggravated sexual assault. *See United States v. Marion*, 404 U.S. 307, 313 (1971) (delay measured from date of arrest or formal accusation). Approximately five years passed between the return of the indictment and appellant's arrest on the capias in May 2000, and there was a six-and-one-half-year delay between indictment and trial. Appellant does not complain of the delay between his arrest and trial, but relies only on the five-year gap between indictment and arrest. This delay was far more than the minimum necessary to trigger judicial examination of the speedy trial claim. This factor weighs heavily against the State. *Zamorano*, 84 S.W.3d at 649.

3

***Reasons for delay.*** Different weights are applied to different reasons for delay. *Barker*, 407 U.S. at 531. A deliberate attempt by the prosecution to delay trial in order to hinder the defense should weigh heavily against the State. *Id.* A valid reason for delay, such as a missing witness, weighs against the finding of a violation. *Id.* Official negligence occupies a middle ground; it should be weighted less heavily against the State than deliberate delay, but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *Id.*

There is no evidence that the State deliberately sought to delay appellant's trial. On the other hand, there is no evidence of a valid reason for the five-year delay between appellant's indictment and his arrest on the capias. The delay appears to have been the result of official negligence. For some reason, the capias was not entered into, or was deleted from, the computerized system by which law enforcement authorities track outstanding warrants. At the same time, the parole board and institutional division employees who were aware of the outstanding Travis County sexual assault charge did not contact prosecutors to advise them that appellant was in custody. This noncommunication between the various agencies weighs against the State, but not heavily.

***Assertion of right.*** A defendant's failure to assert his speedy trial right does not constitute a waiver, but it makes it difficult for him to prove that the right was denied. *Id.* at 532. A defendant who fails to timely assert the right "indicates strongly that he did not really want a speedy trial." *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). "The longer delay becomes, the more likely a defendant who wished a speedy trial would be to take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes."

4

George E. Dix & Robert O. Dawson, *Texas Practice: Texas Criminal Practice and Procedure* § 23.40 (2d ed. 2001).

Appellant made no effort to obtain a trial of the pending Travis County sexual assault charge during the five years he bounced between parole and incarceration prior to his arrest on the capias in May 2000. Appellant seeks to justify that inaction by claiming that he was not aware of "the formal charges" (by which we assume he means the indictment), and he points to the fact that he twice asked prison authorities if a detainer was pending against him and was told no. This argument is disingenuous in that it ignores the undisputed fact that appellant, as early as his arrest in Bexar County in December 1994, knew that he had been charged with aggravated sexual assault in Travis County. Almost certainly, it was his knowledge of the pending charge that prompted him to inquire repeatedly into the existence of a detainer. Appellant testified that by 1997, he assumed that the charge had been "dropped." There is, however, no evidence that appellant, either personally or through a parole officer, ever sought to determine the status of the charge or to seek its prompt disposition, by trial or otherwise. The facts before us support the conclusion that appellant quietly acquiesced in the five-year period of inaction. This weighs heavily against a finding of a speedy trial violation.

*Prejudice.* The speedy trial right is designed to prevent oppressive pretrial incarceration, to minimize the accused's anxiety and concern, and to limit the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532. Although appellant asserted in the district court that his defense had been impaired by the delay, he does not make that argument on appeal. Instead, he claims that he was subjected to more burdensome conditions of confinement on

5

the unrelated burglary conviction as a result of the pending aggravated sexual assault charge. He points to evidence that he was paroled to a residential facility for sex offenders, and to the additional conditions of parole that were attached to that status. He also draws attention to his testimony that, because he was an accused child sexual offender, he was beaten by other inmates and asked by prison authorities to sign a waiver of responsibility for his physical safety. These claims of oppression, anxiety, and concern arising from the pending sexual assault charge are belied, however, by appellant's failure to seek a trial or other disposition of the charge. On balance, we find no showing of significant prejudice to appellant arising from the five-year delay of which he complains. This weighs against a finding of a constitutional violation.

*Balance.* The five-year delay between appellant's indictment and arrest weighs heavily in appellant's favor. Also weighing in his favor, but not so heavily, is the fact that this delay was occasioned by the State's negligence. On the other hand, appellant's acquiescence in the delay weighs heavily against a finding of a speedy trial violation. The absence of prejudice arising from the delay also weighs against appellant's speedy trial claim. On balance, we conclude that a violation of appellant's constitutional right to a speedy trial was not shown and that the district court did not err by overruling the motion to dismiss. Point of error one is overruled.

### *Counsel*

In his second point of error, appellant claims that the district court erred by requiring him to retain counsel after he posted bond in November 2000. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 979, § 2, 1987 Tex. Gen. Laws 3321, 3322 (Tex. Code Crim. Proc. Ann. art. 26.04(b), since

6

amended and renumbered as art. 26.04(m)) (court may not deny appointed counsel solely because defendant has posted bond). He also urges that the court's decision arbitrarily violated the relationship between himself and the attorney appointed to represent him in May 2000. *See Stearnes v. Clinton*, 780 S.W.2d 216, 221 (Tex. Crim. App. 1989) (court may not arbitrarily remove appointed attorney over objections of defendant and counsel).

The only evidence appellant cites relevant to this point of error is a statement by appellant's second appointed attorney, who told the court during the course of the speedy trial hearing: "[H]e [the first appointed attorney] was able to get him released on bond in November of 2000 . . . . And then he was required to hire his own lawyer, and it went on until—I believe, it was April or May of 2001 when he was taken back into custody, and I was appointed to represent him." There is no evidence that the decision that appellant was no longer entitled to appointed counsel was based *solely* on his ability to post bond. There is also no evidence that the court arbitrarily interfered with the relationship between appellant and his first attorney. Finding no constitutional or statutory violation, we overrule point of error two.

Finally, appellant urges that the district court violated his Sixth Amendment rights by refusing to honor his request to replace his second appointed counsel with a new attorney. Appellant asserts that he made a substantial complaint about the attorney then representing him, and that the court had a duty to make a thorough inquiry into the matter. *See Melendez v. Salinas*, 895 S.W.2d 714, 715 (Tex. App.—Corpus Christi 1994, orig. proceeding).

Appellant's request for new counsel was made on a Friday after the court announced its ruling on the motion to dismiss for want of a speedy trial. Jury selection was set to begin the

7

following Monday.  Speaking for himself, appellant explained to the court why he wanted a new attorney:

> Sir, I've been trying to get my issues addressed.  I have letters here I've written to my attorney every month since my arrest in May.  I've met with him twice prior to beginning of these proceedings with the speedy trial.  It was my idea to begin the speedy trial hearing.  After five months had gone by I wasn't getting no cooperation.
>
> This is the only area of my case where I received assistance, is the speedy trial motion.  There were seven or eight other motions filed by my previous attorney that I haven't gone over with my attorney.  I've spoken with my attorney in person regarding the other motions approximately 30 minutes.

The pretrial motions filed by appellant's first attorney, which were the basis for his alleged dissatisfaction with his second attorney, consisted of a motion to suppress statements, "if any," made by appellant following his arrest, three discovery motions, and three requests for notice of other crimes or convictions the State intended to introduce in evidence.  Appellant does not point to any statements made by him that were introduced in evidence.  There is no showing that the State failed to provide suitable discovery.  The record contains the State's notice of other crimes and convictions it planned to introduce at both stages of the trial.  In short, appellant has failed to demonstrate that he had a substantial complaint regarding his new attorney.

A trial judge is under no duty to search until he finds an attorney agreeable to the defendant.  *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982).  A request for a change in counsel cannot be made so as to obstruct the orderly procedure or the fair administration of justice.  *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991).  A trial court has three options when confronted with an eleventh hour request for change of counsel: (1) at its discretion, it can appoint,

8

or allow the accused to retain, new counsel; (2) should the accused ask to represent himself, the court must grant the request; or (3) it may compel the accused who does not waive counsel or assert his right to self-representation to proceed to trial with the lawyer he has, whether he wants to or not. *Id.* at 428-29. On this record, we find no abuse of discretion in the district court's refusal to appoint new counsel and in its insistence that appellant proceed to trial with the lawyer he had.[1] Point of error three is overruled.

The judgment of conviction is affirmed.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   June 19, 2003

Do Not Publish

_____

[1] In denying appellant's request for a new attorney, the trial court observed that appellant's counsel had an excellent reputation, had presented appellant's speedy trial claim "in a very helpful fashion to the court," and had "made the presentation as compelling as possible." Appellant does not contend that counsel rendered ineffective assistance.