

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00752-CR

Derek Jay **GRANT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 19-140-CR
Honorable Sid L. Harle, Judge Presiding[1]

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: April 10, 2024

AFFIRMED

Appellant Derek Jay Grant challenges the trial court's order denying his motion to dismiss

the information based on the denial of his constitutional right to a speedy trial.  We affirm.

### BACKGROUND

On February 21, 2019, the State charged Grant by information with driving while

intoxicated after a Boerne police officer arrested him during a routine traffic stop on January 1,

---

[1] The Honorable Kirsten Cohoon is the current presiding judge of the 451st District Court in Kendall County, and she signed the challenged order on appeal.

2019. The case was originally set for an April 27, 2020 jury trial; however, due to the COVID-19 pandemic, trial was reset for July 20, 2020.[2] Trial was then reset to October 19, 2020 for unknown reasons, followed by additional resets, due to the overcrowded trial docket: February 16, 2021, April 26, 2021, August 16, 2021, and November 29, 2021.

On October 4, 2021, the State moved for a continuance of the November trial setting, arguing the arresting officer was unavailable to testify due to active-duty military obligations, and the trial court then reset the trial to March 21, 2022. The case was subsequently reset to August 15, 2022 for unknown reasons. On August 10, 2022, the State sought another continuance due to the arresting officer's unavailability because of his military obligations, and the next day, the trial court reset the trial for January 17, 2023.

On August 11, 2022, Grant filed a "Motion to Dismiss Information for Denial of Speedy Trial," requesting the trial court grant him a speedy trial or alternatively dismiss the information against him. At the hearing on Grant's motion, the trial court heard testimony from Grant and ultimately denied his motion. The trial court also moved Grant's January 17, 2023 trial date to an earlier date of October 17, 2022, and after the October trial, the jury found Grant guilty of driving while intoxicated. Grant then pursued this appeal, arguing the delay in time between when he was charged and when the trial took place violated his constitutional right to a speedy trial.

### STANDARD OF REVIEW AND APPLICABLE LAW

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to a speedy trial. U.S. CONST. amend. VI; *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021); *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). "The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Cantu v.*

---

[2] In the Spring of 2020, the COVID-19 pandemic hit, initiating a series of emergency orders restricting in-person jury trials. *See First Emergency Ord. Regarding COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020).

*State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (quoting *United States v. Marion*, 404 U.S. 307, 321 (1971)). When a defendant claims he was denied his right to a speedy trial, courts consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lopez*, 631 S.W.3d at 113; *Balderas*, 517 S.W.3d at 767. "[T]he State has the burden of justifying the length of delay, [while] the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280 (footnote omitted). "Moreover, '[t]he length of delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not even be heard until passage of a period of time that is, on its face, unreasonable in the circumstances.'" *Lopez*, 631 S.W.3d at 113 (alteration in original) (quoting *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003)). Once the defendant makes "a threshold showing that the interval between accusation and trial is 'presumptively prejudicial,' then a court must consider each of the remaining *Barker* factors and weigh them." *Balderas*, 517 S.W.3d at 767.

In reviewing the trial court's analysis of the *Barker* factors, we apply a bifurcated standard of review. *Lopez*, 631 S.W.3d at 113–14; *Balderas*, 517 S.W.3d at 767–68. "When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Balderas*, 517 S.W.3d at 767–68. "A reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling." *Id*. at 768. "Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review *de novo*." *Id*.

**APPLICATION**

### A. Length of the Delay

In conducting a *Barker* analysis, "we measure the delay from the time the defendant is formally accused or arrested to the time of trial." *Lopez*, 631 S.W.3d at 114. Courts generally deem a delay approaching one year as "unreasonable enough to trigger a *Barker* inquiry." *State v. Lampkin*, 630 S.W.3d 559, 563 (Tex. App.—San Antonio 2021, no pet.) (quoting *Balderas*, 517 S.W.3d at 768 and *Dragoo*, 96 S.W.3d at 314) (internal quotation marks omitted); *see Lopez*, 631 S.W.3d at 114 ("Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis.").

Here, Grant was arrested on January 1, 2019, and tried on October 17, 2022—a delay of forty-five months. The State concedes on appeal this delay "is sufficient to trigger an analysis of the remaining factors." Accordingly, because the length of the delay stretches beyond the bare minimum needed to trigger a *Barker* inquiry, this factor—in and of itself—weighs heavily against the State.

### B. Reasons for the Delay

In weighing the second *Barker* factor, "we assign different weights to different reasons." *Balderas*, 517 S.W.3d at 768. "Some reasons are valid and serve to justify an appropriate delay." *Id*. "Deliberate delay intended to 'hamper the defense' weighs heavily against the State, while more neutral reasons, such as negligence or overcrowded courts, weigh less heavily." *Id*. (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)). However, "[d]elay caused by either the defendant or his counsel weighs against the defendant." *Id.* Finally, "[i]n the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Id.* (quoting *Dragoo*, 96 S.W.3d at 314) (internal quotation marks omitted).

In this case, the record shows after Grant was charged on February 21, 2019, the trial court set the first pre-trial conference for August 13, 2019. On August 6, Grant requested a continuance because he needed to travel out of state to visit his ill mother. The trial court granted Grant's request, and the pre-trial conference was subsequently reset for October 8, 2019. The record shows the pre-trial conference was reset two more times without explanation with trial initially set for April 27, 2020. The trial date was then reset a total of six times; during the speedy trial hearing, the trial court took judicial notice of the first reset occurring because of the COVID-19 pandemic, the second reset happening without an explanation, and the subsequent resets being attributable to the overcrowded court docket in Kendall County. Defense counsel also recognized many of these resets occurred because of the pandemic and its impact on the trial docket. Thereafter, the trial date was reset three more times with two times attributed to the arresting officer's unavailability due to military obligations, and the other time was not explained.

The delays caused by the COVID-19 pandemic and resulting overcrowded dockets do not weigh against the State. *See Balderas*, 517 S.W.3d at 768 (stating neutral reasons such as overcrowded courts should be weighted less heavily); *State v. Conatser*, 645 S.W.3d 925, 929–30 (Tex. App.—Dallas 2022, no pet.) (concluding months of delay "dominated by the unforeseeable initial impact of the COVID-19 pandemic" not attributable to State). Texas law recognizes the period of delay caused by the COVID-19 pandemic and subsequent limitations on jury trials fit into the neutral category, and this case is no different. *See Conatser*, 645 S.W.3d at 929–30. As to the unexplained delays, we may not presume either a deliberate attempt by the State to prejudice the defense or a valid reason for the delay. *See Dragoo*, 96 S.W.3d at 314. Finally, the record shows the remaining delays were due to the unavailability of the State's witness, who was the arresting officer and inaccessible due to his active-duty military obligations. This explanation serves as a valid reason to justify an appropriate delay, and there is no evidence the State

deliberately delayed Grant's trial for strategic gain. *See Barker*, 407 U.S. at 531 ("Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."). Accordingly, when considering the COVID-19 pandemic, the impact it had on overcrowded dockets, and the arresting officer's unavailability due to military obligations as the primary reasons for the numerous trial resets, we conclude the second *Barker* factor does not weigh against the State.

### C. Defendant's Assertion of the Right

"A defendant's 'assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" *Lopez*, 631 S.W.3d at 116 (quoting *Zamorano v. State*, 84 S.W.3d 643, 651 (Tex. Crim. App. 2002)). "A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want one." *Balderas*, 517 S.W.3d at 771. And, "[f]iling for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. Finally, "inaction weighs more heavily against a violation the longer the delay becomes." *Balderas*, 517 S.W.3d at 771 (quoting *Dragoo*, 96 S.W.3d at 314) (internal quotation marks omitted).

The record shows Grant moved for a speedy trial on August 11, 2022—forty-three months after he was arrested. In his motion, he prayed for the trial court to grant him a speedy trial or alternatively dismiss the information against him. During the hearing on the motion, however, Grant only asked the trial court to dismiss his case. Because Grant waited forty-three months to assert his right to a speedy trial and then primarily sought a dismissal rather than a speedy trial at the hearing, the third *Barker* factor weighs heavily against him. *See Balderas*, 517 S.W.3d at 771; *Cantu*, 253 S.W.3d at 283.

### D. Prejudice to the Defendant

"The fourth *Barker* factor focuses on prejudice to the defendant because of the length of delay." *Balderas*, 517 S.W.3d at 772. "To analyze prejudice, we consider three interests of defendants that the Speedy Trial Clause was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Id*. "The last interest is the most important because the fairness of the criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id*. "A defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Id*. "Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id*.

In considering the first interest, the record shows Grant was released on bond the day he was arrested, and he remained on bond pending trial. Thus, he was not subjected to oppressive pretrial incarceration. Turning to the second interest, Grant testified he had missed approximately twelve days of work because he had to appear for different settings in the case. He estimated his missed work resulted in a loss of $2,000 in wages. He also testified he experienced anxiety each time he prepared to appear before the trial court, only to face a reset. Grant compares his testimony to the defendant in *Zamorano v. State*, in which the Texas Court of Criminal Appeals concluded similar testimony supported an inference of actual prejudice. *See* 84 S.W.3d at 654 ("Here, the length of the delay itself supports an inference of actual prejudice, as does appellant's testimony of the direct economic costs, the four years' worth of disruptions to his job, and the weekly requirement to report to the bonding company"). We agree because like the defendant in *Zamorano*, Grant testified he was "concerned," "thinking about [the case] on a regular basis," and anxious about whether the case would go forward each time he appeared. *See id*. Thus, "it is at least some evidence of the type of 'anxiety' that the [United States] Supreme Court considers under

the prejudice prong of *Barker*." *Id.* Finally, in analyzing the last interest, there is nothing in the record indicating Grant was prejudiced or his defense was impaired; here, Grant testified he had a "pretty good" memory about the events surrounding his arrest.

After considering the three interests, we conclude the fourth *Barker* factor concerning prejudice weighs slightly in favor of Grant.

### E. Balancing Factors

Having outlined the evidence relevant to the four *Barker* factors, we must now balance them by weighing the strength of each factor and balancing their relative weights "in light of the conduct of both the prosecution and the defendant." *Cantu*, 253 S.W.3d at 281 (quoting *Zamorano*, 84 S.W.3d at 648) (internal quotation marks omitted); *see Zamorano*, 84 S.W.3d at 648 (providing the factors are related and must be considered along with any other relevant circumstances). We also remain mindful to balance them "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Balderas*, 517 S.W.3d at 773; *Cantu*, 253 S.W.3d at 281. This is because dismissal of a charge is a radical remedy, and a "wooden application of the *Barker* factors" infringes upon "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." *Cantu*, 253 S.W.3d at 281 (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)) (internal quotation marks omitted).

Weighing in favor of finding a violation of Grant's speedy trial right are the presumptively prejudicial length of delay along with the slight prejudice to Grant caused by his emotional and financial hardship. *See Zamorano*, 84 S.W.3d at 654. The record, however, also shows the primary reasons for the delay—the COVID-19 pandemic, a resulting overcrowded trial docket, and the arresting officer's unavailability due to military service—do not weigh against the State. And, the factor that weighs most heavily against Grant was his decision to move for a speedy trial

forty-three months after his arrest, at which point he primarily sought an outright dismissal. *See Cantu*, 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). Finally, as to prejudice, Grant failed to show how the length of the delay hampered his ability to put forward a defense. Accordingly, when balancing the four factors together in light of the parties' conduct and relevant circumstances, we conclude they weigh against finding a violation of Grant's constitutional right to a speedy trial. We therefore hold the trial court did not err in denying Grant's motion, and we overrule his sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish