

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00145-CR

_____

ANTHONY JAMES HUDSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 21068

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Some five years after his indictment on a charge of attempted indecency with a child, Anthony James Hudson's case was finally set for trial. After having filed a motion to dismiss under a claim that he had not been afforded a speedy trial and having heard that motion denied, Hudson entered a plea of guilty. Pursuant to a plea bargain, the adjudication of Hudson's guilt was deferred; he was placed on community supervision for five years and was ordered to pay a $2,000.00 fine. Hudson now appeals his conviction on the sole ground that the trial court erred in denying his motion for a speedy trial. Because we find no error in the trial court's actions, we affirm its judgment.

As a defendant accused of a crime, Hudson had an interest in mitigation of the anxiety and concern that accompanied his public accusation, avoidance of impairment to his defense, and freedom from oppressive pretrial incarceration. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution. *Id.* This right attached once Hudson was arrested or charged. *Id.*

The right to a speedy trial defies quantification in days or months. *Barker*, 407 U.S. at 523. Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the four *Barker v. Wingo* factors." *Cantu*, 253 S.W.3d at 280. These factors include: (1) the length of the delay, (2) the reasons occasioning the delay, (3) the

assertion by the accused of the right to a speedy trial, and (4) the prejudice caused to the accused by the delay. *Id.*; *Barker*, 407 U.S. at 530. "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81. No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Id.* at 281.

## I. Standard of Review

"In reviewing the trial court's ruling on [an accused's] federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Id.* at 282 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). Review of the *Barker* factors involves both legal and factual determinations, but "[t]he balancing test as a whole . . . is a purely legal question." *Id.* (quoting *Zamorano*, 84 S.W.3d at 648 n.19). Under an abuse of discretion standard, we defer to the trial judge's resolution of facts and reasonable inferences drawn therefrom, and we review the evidence in a light most favorable to the ruling. *Id.*

## II. Analysis of the *Barker* Factors

### A. The Length of Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be considered presumptively prejudicial. *Id.* at 281. In this case, Hudson's indictment was filed June 23, 2004,

but no trial was conducted until July 2009. A delay of approximately five years is presumptively prejudicial. *Id.* (citing *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983), and *Doggett v. United States*, 505 U.S. 647, 651–52 n.1 (1992) (noting courts generally find delays approaching one year presumptively prejudicial)). This factor weighs toward a finding that Hudson was denied a speedy trial.

### B. Reason for the Delay

When analyzing this prong of the *Barker* test, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. Deliberate attempts to delay trial in order to hamper a defense is weighed heavily against the State. *Id.* More neutral reasons, such as negligence or overcrowded courts are weighed less heavily. *Id.* A valid reason for delay "should serve to justify appropriate delay." *Id.* Although Hudson's motion for speedy trial failed to analyze this factor, the trial court promptly held a hearing on the motion for speedy trial, wherein the State admitted that it had "no information as to what occurred from April '04 until . . . October 24th, 2006" aside from "pretrial negotiation." In addition to this admission, at a February 2009 setting, the State indicated it was not ready for trial because it expected to try another case set for that week. Without further evidence, this factor would weigh against the State and in favor of a finding of the denial of a speedy trial.

But the delays attributable to the State are not the entire story here. The case history reveals that Hudson's actions also contributed to some delay. The case was originally set for trial

4

in December 2006 after discovery was completed in October of that year. Hudson and his first appointed counsel agreed to submit Hudson for a polygraph examination, the results of which caused a modification of the State's plea offer. At about this stage of the proceedings, Hudson became dissatisfied with his court-appointed attorney; the trial court's October 8, 2007 docket sheet notes that "the defendant appeared, the Court could not reach the trial, and the trial was rescheduled, that the defendant requested time to hire an attorney." The trial court then allowed Hudson two months to locate and retain an attorney. It was not until December 2007 that Hudson announced to the court that he had retained different counsel. The State made clear that the parties "re-conducted discovery," and Hudson admitted that it took several months for his new counsel to get fully acquainted with the case. Pretrial was set for March 24, 2008. Although all matters were agreed, on April 23, 2008, Hudson announced he had lost his job, and the trial court was required to hold a hearing to determine whether he was indigent at that time. In October 2008, the court was again unable to reach the trial.[1] It was re-set for February 9, 2009, when the State announced it was not ready to try the case because it expected another case to go to trial. Motions practice and discovery continued until July 8, 2009, when the motion to dismiss was filed.

Delay which is attributable in whole or in part to the defendant may constitute waiver of a speedy trial claim. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Dickey v. Florida*, 398 U.S. 30 (1970)). Hudson spent one year preparing for his case before deciding he

---

[1]The record of the hearing suggests that neutral reasons, such as overcrowded courts, served as the main reason for the delay.

was dissatisfied with his court-appointed attorney and announcing he had retained different counsel. After the new attorney spent several months preparing, Hudson lost his job and requested that an indigency determination be made, resulting in an additional four-month delay. Although the State sought a continuance on February 9, 2009, it was Hudson's counsel who suggested trial be held July 13, 2009. We find that Hudson contributed to the delay in his trial and hold that this *Barker* factor mitigates against a finding of a violation of Hudson's right to a speedy trial.

### C. Assertion of Right

Next, Hudson had the responsibility to timely assert his right to a speedy trial. *Cantu*, 253 at 282 (citing *Barker*, 407 U.S. at 527–28). Failure to make repeated requests for a speedy trial "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.* at 283 (quoting *Barker*, 407 U.S. at 534–36).

Here, the motion for speedy trial was not filed until July 8, 2009.[2] It was heard and denied on the same day as jury selection began for Hudson's trial. Based on the delay in seeking speedy trial, we find this factor weighs against Hudson. *See Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003) (holding this factor weighed against defendant where he failed to assert his speedy trial right for three and a half years until immediately before trial, although represented by counsel); *see also Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. [Panel Op.] 1982)

---

[2]A letter sent to the State by Hudson's counsel in December 2007 was intended as notice of demand for a speedy trial. Although the letter contains a notation indicating a carbon copy was sent to the clerk, the clerk's record reflects it was not filed with the Court. The letter was included as an exhibit at the hearing on the motion to dismiss.

(remaining silent for four years and waiting one month before trial to assert right to speedy trial makes it difficult to prove defendant was denied right to speedy trial).

        D.      *Prejudice*

Prejudice occasioned by the delay in proceeding to trial is assessed in the light of the three interests which the right to a speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration; (2) mitigation of the anxiety and concern on the part of the accused that accompanies a public accusation; and (3) avoidance of impairment to the defense of the charges. *Barker*, 407 U.S. at 532. "[T]he burden is on the accused to make some showing of prejudice which was caused by the delay of his trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973).

Hudson posted bond in 2006; therefore, he was not incarcerated for an unusually long period of time. His brief acknowledges that he did not suffer oppressive pretrial incarceration. We will thus begin with an examination of the level of anxiety which Hudson may have experienced during the period between his indictment and his eventual trial. General anxiety is at least some evidence of the type of anxiety to be considered under *Barker*, but it, standing alone, is not sufficient proof of prejudice when "it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 285–86. Besides the general allegation in the motion that Hudson "has experienced much anxiety and concern," Hudson testified, "I've had to pass up jobs. I've stayed away from my family. Just

7

scared to go anywhere, afraid I'm going to get in trouble for -- it's been real hard." Hudson was subject to pretrial bond conditions and supervisory fees. He also testified that he lost his job at Clayton Homes for "missing too many days coming back and forth to court and reporting," but his reporting to law enforcement officials was not due solely to this charge; it was also due in part to his obligations to report while under community supervision as the result of an unrelated "marijuana charge." We do not find that Hudson's level of anxiety exceeded that normally associated with a charge of attempted indecency with a child.

Limiting the possibility of impairment of a defense is the most serious interest which is protected by the right to a speedy trial. *Barker*, 407 U.S. at 531. If witnesses become unavailable during a delay or are unable to recall events, prejudice is obvious. *Id.* at 532. Hudson complains that the outcry witness (the child's great-grandmother) passed away in March 2006, three years before Hudson's assertion to right of speedy trial. Hudson expected her to testify that the child "was unsure if the conduct even occurred on at least one occasion because [the child] may have been dreaming." The child was interviewed in 2004 by the Child Advocacy Center. During the interview, she admitted that she may have been only dreaming the first instance of attempted indecency. However, the child went further to describe two other separate instances of attempted indecency by Hudson. The State suggested that the interview could be played for the jury to impeach the child if she denied possibly only having dreamed the first instance. Because the substance of the testimony Hudson wished to preserve was available to him

8

by sources other than the deceased great-grandmother, we conclude that he failed to meet his burden to demonstrate harm occasioned to his defense due to the death of the child's great-grandmother during the delay.

Hudson also suggested that the child, who was nine at the time of the offense, may not have been able to accurately recall the events due to the passage of time. Again, it was Hudson's burden to make a prima facie showing of prejudice. *Dokter v. State*, 281 S.W.3d 152, 159 (Tex. App.—Texarkana 2009, no pet.). A defendant must offer more than mere speculation of faded memories to show prejudice. *Munoz*, 991 S.W.2d at 829. Mere surmisal will not suffice to show harm. Hudson failed to support his claim with evidence that the child was unable to remember events involving him which occurred in 2004. Thus, we conclude Hudson did not meet his prima facie burden to demonstrate that he suffered prejudice. This factor weighs against a showing that the delay occasioned damage to Hudson.

*E.      Balancing*

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo*, 96 S.W.3d at 316. The only factor that weighs in favor of Hudson is the presumptively unreasonable length of delay. The fact that Hudson contributed to the delay, "quietly acquiesced in the delay for [several] years, indicating that he really did not want a speedy trial," and failure to demonstrate prejudice, all weigh against him. *Id.* We hold that the weight of the factors, when balanced together, leads us to conclude Hudson's right to a speedy trial was not violated. *See Dokter*, 281

9

S.W.3d at 162 (holding near five-year delay did not violate right to speedy trial where defendant waited fifty-five months to assert right).

## III. Conclusion

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     January 27, 2010
Date Decided:      April 7, 2010

Do Not Publish