ACCEPTED
01-13-00900-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/20/2015 12:31:12 PM
CHRISTOPHER PRINE
CLERK

**NO. 01-13-00900-CR**

**IN THE COURT OF APPEALS**
**FIRST SUPREME JUDICIAL DISTRICT**
**HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/20/2015 12:31:12 PM
VOID K
CHRISTOPHER A. PRINE
Clerk

**RAYMOND LEE CAVITT,**
*Appellant*

**V.**

**THE STATE OF TEXAS,**
*Appellee*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/20/2015 12:31:12 PM
CHRISTOPHER A. PRINE
Clerk

On Appeal from the 174th District Court of Harris County, Texas
Cause No. 1342490

**BRIEF FOR APPELLANT**

ORAL ARGUMENT REQUESTED

**NICOLE DEBORDE**
TBA No. 00787344
712 Main, Suite 2400
Houston, Texas 77002
Telephone: (713) 228-8500
Facsimile:  (713) 228-0034
Email: Nicole@BSDLawFirm.com

**COUNSEL FOR APPELLANT**

i

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| APPELLANT: | Raymond Lee Cavitt, TDCJ 01897462<br>Michael Unit<br>2664 FM 2054<br>Tennessee Colony, Texas 75886 |
| PRESIDING JUDGE AT PRETRIAL AND VOIR DIRE PROCEEDINGS: | Hon. Leslie Brock Yates<br>174th District Court<br>1201 Franklin<br>Houston, Texas 77002 |
| PRESIDING JUDGE: | Hon. Ruben Guerrero<br>174th District Court<br>1201 Franklin<br>Houston, Texas 77002 |
| TRIAL PROSECUTORS: | Stephen Driver<br>Gretchen Flader<br>Paul Fortenberry<br>Assistant District Attorneys<br>1201 Franklin<br>Houston, Texas 77002 |
| DEFENSE COUNSEL AT TRIAL: | William R. Gifford<br>Attorney at Law<br>1302 Waugh Drive<br>Houston, Texas 77019 |
| STATE'S COUNSEL ON appeal: | Hon. Devon Anderson<br>Harris County District Attorney<br>1201 Franklin<br>Houston, Texas 77002 |
| DEFENSE COUNSEL ON APPEAL: | Nicole DeBorde<br>Attorney at Law<br>712 Main Street, Suite 2400<br>Houston, Texas 77002 |

ii

**TABLE OF CONTENTS**

Identity of Parties and Counsel ............................................................................ ii

Table of Contents ................................................................................................ iii

Index of Authorities ............................................................................................iv

Statement of the Case..........................................................................................1

Issues Presented ..................................................................................................2

Statement of Facts ...............................................................................................3

Argument..............................................................................................................9

Prayer ..................................................................................................................39

Certificate of Compliance ..................................................................................41

Certificate of Service .........................................................................................42

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. State*, 740 S.W.2d 749 (Tex. Crim. App. 1987) ................................25

*Barker v. Wingo*, 407 U.S. 515 (1970) ........................................................... 34-35

*Delrio v. State*, 820 S.W.2d 29 (Tex. App. – Houston [14th Dist.] 1991) ...............15

*Eddlemon v. State*, 591 S.W.2d 847 (Tex. Crim. App. 1979)(Panel No. 3)............38

*Ephram v. State*, 471 S.W.2d 798 (Tex. Crim. App. 1971)....................................10

*Estelle v. Williams*, 425 U.S. 501 (1976).................................................................11

*Harris v. State,* 827 S.W.2d 949 (Tex. Crim. App. 1992)(en banc)........................35

*Jabari v. State*, 273 S.W.3d 745 (Tex. App. – Houston [1st Dist. 2008, no pet.)32,33

*Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App), *cert. denied* (1997) .............24

*Lape v. State,* 893 S.W.2d 949 (Tex. App. – Houston [14th Dist.], pet ref'd.)........32

*Martin v. State*, 265 S.W.3d 435 (Tex. App. – Houston [1st Dist.] 2007, no pet.)24,29

*Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993) .......................................37

*Robinson v. State*, 240 S.W.3d 919 (Tex. Crim. App. 2007) ..................................34

*Rodriguez v. State,* 129 S.W.3d 551 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd)…………………………………………………………………………24

*Shelton v. State*, 841, S.W.2d 526 (Tex. App. – Fort Worth 1992, no pet.)............15

*Simpson v. State*, 886 S.W.2d 449 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd)27

*Sinegal v. State*, 789 S.W.2d 383 (Tex. App. – Houston [1st Dist.] 1990, pet. ref'd)25

*Sorrell v. State*, 169 S.W. 299 (Tex. Crim. App. 1914) ...........................................14

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................................9, 13

*Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992)...................................27, 28

*Thomas v. State*, 312 S.W.3d at 732 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd)..........................................................................................................................28

*Thompson v. State*, 514 S.W.2d 275 (Tex. Crim. App. 1974)..................................38

*Zamaro v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002)(en banc).........................35

**Constitutions, Statutes and Other Authorities**

Tex. Code Crim. Proc. 35.16(9)..................................................................................14

Tex. R. App. Proc. 25.2(a) ...........................................................................................1

Tex. R. App. Proc. 9.....................................................................................................41

Tex. R. Evid. 403 .........................................................................................................24

Tex. R. Evid. 609 ..............................................................................................25, 27, 28

## STATEMENT OF THE CASE

On June 14, 2012, Appellant was charged by indictment with Sexual Assault of a Child in Cause No. 1342490. (C.R. at 35.) Appellant was brought to trial on September 26, 2013. (III R.R. at 1). Appellant entered a plea of not guilty to the charges. (IV R.R. at 11.) The jury found Appellant guilty on October 3, 2013. (VII R.R. at 3.) The jury found the allegation in the enhancement paragraph true and sentenced Appellant to life in the Texas Department of Criminal Justice. (VII R.R. at 4-5.) Appellant filed a Motion for New Trial and Request for Evidentiary Hearing on November 4, 2013 (MNT[1]) The trial court signed an order of presentment on the motion for new trial on November 8, 2013. The trial court denied Appellant's Motion for New Trial and Request for Evidentiary Hearing on December 16, 2013. (IX R.R. at 24.) Appellant gave timely notice of appeal and the trial court's certification of defendant's right of appeal ensures Appellant has the legal right to appeal. (C.R. 207, 209.) Tex. R. App. Proc. 25.2(a).

---

[1] Appellant's Motion for New Trial and Request of Evidentiary Hearing will hereinafter be cited as "MNT."

## ISSUES PRESENTED

**Issue One:** Appellant received ineffective assistance of counsel.

**Issue Two:** The trial court erred in denying Appellant's motion for a speedy trial.

**Issue Three:** The trial court erred by failing to grant an evidentiary hearing on the Motion for New Trial.

**Issue Four:** The trial court erred by bringing a material defense witness, D.R. into the courtroom, handcuffed, and in a jail uniform.

**Issue Five:** A new trial should have been granted based on newly discovered evidence.

## STATEMENT OF FACTS

R.R. was fifteen years old at the time of the trial. (IV R.R. at 41.) Prior to the date of the alleged incident, R.R. had not been home for two weeks. (IV R.R. at 32.) Instead of going home, R.R. would go to Appellant's house with her best friend, D.R., who had a room at Appellant's house. (IV R.R. at 33, 47.) R.R. went to Appellant's house almost every day after school and stayed the night there once in a while. (IV R.R. at 49.)

On January 2, 2012, R.R. claims that she was over at Raymond's house with D.R. in Appellant's room smoking. (IV R.R. at 52, 53.) Appellant left for a few hours and returned while R.R. was asleep according to R.R. (*Id*.) R.R. had also taken "handlebars", a type of drug, that day. (*Id*.) She claims that Appellant gave her and D.R. one of the handlebars each in their hand and placed some in a drink that they consumed. (IV R.R. at 53-54.) R.R. claims that while they were consuming these drinks, Appellant left, and R.R. stayed in Appellant's room. (IV R.R. at 55-56.) R.R. claims that Appellant would give marijuana and handlebars to D.R. (IV R.R. at 50.) Appellant denies giving them any bars or marijuana. (*Id*.) Gabriale Cavitt testified that she never saw Cavitt use any drugs other than taking his medicine. (V R.R. at 77.)

As R.R. was sitting in Appellant's bed talking to D.R., D.R. fell asleep. (IV R.R. at 57.) R.R. stated that she stayed awake for a while and then went to sleep

3

next to D.R. (*Id.*) According to R.R., Appellant was not there when R.R. went to sleep, but when she woke up, she was laying on her stomach, and Appellant was on top of her. (IV R.R. at 58.) R.R., who weighs about 200 pounds (IV R.R. at 106), never felt anyone pulling her pants down, but she felt pain in her vagina. R.R. claims Appellant was trying to force his penis into her vagina, but that it did not penetrate her vagina even though it seemed like Appellant was trying to penetrate her with his penis and his arms were "all over her body". (IV R.R. at 58-60, 85.) She testified that when she awoke, she was wearing a pajama jacket and her long pajama pants, which were down by her ankles, and he was not wearing any pants, but she did not see his penis. (IV R.R. at 58-59.) The lights were out in the ceiling of the bedroom and/or the hall, so the only light in the room would have been from the television or computer. (IV R.R. at 84.) R.R. testified that she knew it was Appellant because of his voice and she recognized his figure. (IV R.R. at 105.) According to R.R., when she woke up she said, "What are you doing? He said: I'm just playing with you." (IV R.R. at 59.) She claims Appellant then jumped up over the front of the bed. (IV R.R. at 108.) She tried to wake up D.R., but she would not wake up. (IV R.R. at 59.)

Raven then went up to Appellant's granddaughter and niece's apartment. (IV R.R. at 59.) Appellant's niece is Deanna[2] Hoedzoade, and his granddaughter is

---

[2] Deanna is referred to as "Dee" during most of the trial testimony.

named Gabriale. (IV R.R. at 63-64; V R.R. at 61.) They went down and carried D.R. upstairs. (IV R.R. at 64.)D.R. did not wake up until the next morning. (*Id.*) R.R. left and went to Juanita Robicheaux's house and told a story of what she claimed occurred. Juanita Robicheaux is Appellant's hospice provider, and Appellant would go to her house every day. (V R.R. at 59, 123.) They did not believe R.R.. (IV R.R. at 90.) While R.R. does not remember talking to Shayshay Miller at Juanita Robicheaux's house and telling her that she was not sure what happened, R.R. does remember speaking to Makayla Wilborn at Juanita Robicheaux's house. (IV R.R. at 115, 116.) She denies telling Makayla Wilborn that she was not sure or nothing happened. (*Id.*) R.R. claims that Wilborn asked her what happened and she did not tell her anything. (*Id.*) They did not call the police. (IV R.R. at 90.) She did not tell her mother the story until she eventually went home two days after the alleged incident, and still no one called the police. (IV R.R. at 66, 67.) R.R. claims she did not originally tell her mother because she did not want her mother to know she was doing drugs. (IV R.R. at 67.) R.R.'s mother told the school principal and they called the police. (*Id.*) R.R. was not medically examined until 22 days after the alleged incident. (IV R.R. at 145.) The exam showed no abnormalities. (IV R.R. at 20.)

Gabriale Cavitt testified that she and Dee Hoedzoade went to Appellant's apartment on the day this incident is alleged to have occurred. (V R.R. at 66.)

5

When they arrived, Appellant was fully dressed and washing dishes. (V R.R. at 66-67.) They talked to Appellant for five or ten minutes and then went back upstairs to their apartment. (V R.R. at 67.) Gabriale testified that it only takes four to five seconds to walk to her apartment. (*Id.*) Not even five minutes later, R.R. came to her apartment banging on the door and alleged that Appellant tried to rape her. (V R.R. at 69.) R.R. did not want to call the police. (V R.R. at 72.) Gabriale stated that she went back down to Appellant's apartment and called D.R. five times telling her to get up but did not want to get up. (V R.R. at 73.) Gabriale testified that she picked D.R. up and carried her back up to their apartment and called Juanita Robicheaux. (*Id.*) The next morning, while it was still dark outside, Juanita Robicheaux's boyfriend, Tremane, picked up R.R. and D.R.. (*Id.*)

After Dee told Appellant that a girl was claiming somebody touched her, he picked up the phone and called 911. (V R.R. at 143.) The police would not file a complaint because Appellant did not know what girl said someone touched her; therefore, they lacked a complaining witness. (V R.R. at 145.)

Appellant testified that the day after this alleged incident, R.R. and D.R. were at his house when he arrived home after leaving Juanita Robicheaux's house. (V R.R. at 136.) They stayed at his house all night. (V R.R. at 136-37; VI R.R. at 21.) The next day R.R. wore Appellant's clothes. (V R.R. at 142; VI R.R. at 24.) Gabriale saw R.R. with D.R. at Appellant's house after school let out and R.R. was

6

wearing the clothes Appellant gave her. (V R.R. at 80-81.) R.R. denies going back to Appellant's house the next day after she got out of school, and denied going to Appellant's house and wearing his clothes to school the next day. (IV R.R. at 76 - 77.) R.R. was reluctant to talk to the police and was uncooperative. (IV R.R. at 26-31.)

A letter was written in R.R.'s handwriting apologizing for making up this allegation and stating that she was intoxicated and on drugs when she did. (Def.'s Ex. 1) According to Gabriale Cavitt, the letter was prepared at her house and dated January 28, 2013. (V R.R. at 84.) Gabriale denies helping R.R. write the letter and testified that she only proofread it. (V R.R. at 85.) R.R. claims that D.R. wrote a statement and then asked her to copy it in her own handwriting and sign it, and that she was pressured to write it. (IV R.R. at 70, 76.) D.R. was also present at Gabriale Cavitt's when R.R. wrote the letter. (VI R.R. at 25.) D.R. denies writing the letter or telling her what to put in the letter, and she testified that R.R. gave her the letter. (VI R.R. at 25-26.)

Appellant acquired statements from Makayla and Shayshay Miller and he brought those statements when he talked to Sergeant Colburn. (V R.R. at 152.) Furthermore, Appellant testified that he could not become erect as a result of his medications. (V R.R. at 154.) Appellant denies trying to molest R.R. (V R.R. at 155.) Appellant did not know if R.R. was in his apartment the day of the incident

7

because he did not see her there. (V R.R. at 165.) Appellant did not remember Gabriale picking up D.R. and carrying her from his apartment or trying to wake her up. (V R.R. at 167.) Appellant was sleeping at the time this would have occurred, and Dee was the one that woke him up. (V R.R. at 167, 195.)

D.R. was brought into the courtroom in front of the jury in handcuffs and a brown inmate jumpsuit. (VI R.R. at 3, 11-12.) Defense counsel requested that the handcuffs be removed. (VI R.R. at 3.) According to D.R., her mother, Juanita Robicheaux was out of town at the time of the trial. (VI R.R. at 6.) She testified that on the day of the incident, she and R.R. smoked marijuana when Appellant was not there. (VI R.R. at 8-9.) D.R. was the one that got the handlebars off of the headboard of Appellant's bed, R.R. asked her for the handlebars, and D.R. gave her one. (VI R.R. at 10, 56.) According to D.R., Appellant did not have anything to do with them smoking or doing handlebars. (VI R.R. at 11.) D.R. testified that she put handlebars inside of a drink and put it in the freezer and gave herself one and half and she gave R.R. one and half handlebars. (VI R.R. at 56.) She also testified that she was just asleep not passed out when she was carried. (VI R.R. at 61.)

**ARGUMENT**

**Issue One: Appellant received ineffective assistance of counsel.**

Appellant hereby incorporates by reference the Statement of Facts portion of this brief as set forth at 3-8, *supra.*

**A. Standard of Review**

There are two components to a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The appellant must establish that his trial counsel performed deficiently and that the deficiency operated to prejudice him. *Id.* To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In evaluating the first component, reviewing courts must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of trial, but instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

**B. Trial Counsel improperly informed the jury that Appellant had already been incarcerated based on this case for the past 542 Days.**

During voir dire, defense counsel informed the jury that Appellant had been in jail on this case for five hundred and forty two days, infringing on his fundamental right to the presumption of innocence. In *Ephram v. State*, the Texas Court of Criminal Appeals held that "trying a defendant in prison clothing infringed upon his right to presumption of innocence and required reversal." 471 S.W.2d 798 (Tex. Crim. App. 1971).

Defense counsel started voir dire but stating "It's my high honor and privilege to represent Mr. Cavitt. I've known him for 542 days now." (III RR. At 121.) Defense was asking the venirepanel whether the fact that he has been indicted makes him guilty, and a venireperson responded:

| | |
|---|---|
| [Venireperson]: | How many days did you say he's been locked up? |
| [Defense counsel]: | Five-forty-two |
| [Venireperson]: | I don't know. |
| [Defense counsel]: | That has nothing to do with it. We're getting to trial. I'm asking about this paper. |
| [Venireperson]: | He's been in there that long? |
| [Defense counsel]: | Right. |
| [Venireperson]: | So, something must be wrong. |
| [Defense counsel]: | Right. What must be wrong? |

10

| | |
|---|---|
| [Venireperson]: | He's guilty. |
| [Defense counsel]: | Because he's been here 542 days he must be guilty? |
| [Venireperson]: | Yeah. Why is taking him so long to get the evidence or whatever and get it lined out and get him out of here? |
| [Defense Counsel]: | I've been ready for trial after 90 days. (III RR. At 128-29.) |

Defense counsel also elicited testimony from Appellant that he had a lengthy pretrial incarceration.

| | |
|---|---|
| [Defense Counsel]: | And you've been in jail now how long? |
| [Appellant]: | Almost two years. |
| [Defense Counsel]: | 550 days, 48 days, something like that? |
| [Appellant]: | Yes, sir. (V R.R. at 113.) |

Defense counsel's comments regarding Appellant's lengthy pretrial incarceration violated his constitutional protections and the requisite presumption of innocence. His comments violated Appellant's presumption of innocence under the Fourteenth Amendment to the United States Constitution. These comments are analogous to cases in which an accused is brought in front of the jury in prison clothes, and infringe on Appellants right to be presumed innocent until proven guilty. To implement the presumption the presumption [of innocence], courts must

11

be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *Estelle v. Williams*, 425 U.S. 501 (1976). Similar to wearing prison garb, pretrial incarceration "operates usually against only those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition." *Id*. at 505. There can be no valid strategically reason to comment on Appellant's lengthy pretrial incarceration.

### C. Failing to adequately inform Appellant about advantages and disadvantages of testifying.

During voir dire, defense counsel informed the jury that he decides whether or not Mr. Cavitt will testify. (III RR. At 129.) He later reiterated this again to the jury by stating, "Now, if Mr. Cavitt doesn't testify – and again, it would be up to me – would you hold that against him on the first row?" (III R.R. at 129.) "I'm having my client testify and my client has a checkered [past], he's been to prison before, can you set all that aside, can you set all that aside and not think about that at all, and just on the facts of this case and the testimony you hear [and] render a verdict." (III R.R. at 139.) Before Appellant testified, defense counsel went on the record and made Appellant confirm that he understands that he has the right to

12

testify or not and that if he testifies he would be subject to rigorous cross-examination. (V R.R. At 111.)

Nevertheless, trial counsel failed to adequately discuss with Appellant whether or not he should testify during the guilt-innocence phase of the trial. (MNT, Def.'s Ex. 4.) Appellant has a criminal history including a previous sexual assault conviction among other serious convictions. Counsel failed to discuss with Appellant that his prior criminal history could be revealed to the jury if he decided to testify. (MNT, Def.'s Ex. 4.) If he had been informed of this information, Appellant would have chosen not to testify at the guilt-innocence phase of the trial. (MNT, Def.'s Ex. 4.) Appellant even filed a letter with the trial court asking that he order the district attorney not to bring up any other case that is not involved with his current charge. (MNT, Def.'s Ex. 12.)(C.R. at 123-27.) The Defendant's criminal history came out during the guilt-innocence phase of the trial after the Defendant testified.

Counsel's failure to advise Appellant of the disadvantages of testifying, including the admissibility of his prior sexual assault conviction, was outside the wide range of professionally competent advice and did not constitute the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668 (1984). The prejudicial effect of the admission of a prior sexual assault conviction

13

during a sexual assault of a child trial is apparent, and Appellant was denied a fair trial by counsel's failure to inform him of the effect of his decision to testify.

### D. Failing to challenge or strike venireperson.

In response to questioning regarding Appellant's criminal history and being able to render a fair verdict, venireperson number 39 stated,

| | |
|---|---|
| [Venireperson]: | Like the previous two are saying, if the person has a history of the similar crime and their testimony is not credible in my eyes. |
| [Defense counsel]: | And you couldn't render a fair and impartial verdict. Is that right? |
| [Venireperson]: | That's hard to say that. (III R.R. at 145.) |

Defense failed to challenge venireperson 39 for cause, or move to strike him. (III R.R. at 149-59) (C.R. at 169.) Venireperson 39 was placed on the jury presiding over the trial. (III R.R. at 160.)

In this case Appellant's prior conviction for sexual assault was revealed during the guilt-innocence state of the trial. Appellant was entitled to a fair and impartial jury under the Sixth Amendment to the United States Constitution and Art. 1 § 10 of the Texas Constitution. Under the Texas Code of Criminal Procedure, Article 35.16(9), venireperson 39 was challengeable for cause because he had a bias against the defendant. "One improper juror destroys the integrity of the verdict." *Sorrell v. State*, 169 S.W. 299, 303 (Tex. Crim. App. 1914). There

14

can be "no reasonable defense strategy that would justify allowing such an individual to sit on a jury to determine the legal fate of one's client in a criminal trial. Permitting such an occurrence undermines in advance the perceived essence of a jury's purpose to render a fair and impartial verdict. *Delrio v. State*, 820 S.W.2d 29, 32 (Tex. App. – Houston [14th Dist.] 1991).

## E. Failing to secure the presence of material witnesses to testify at the trial.

Counsel was ineffective for failing to subpoena material witnesses in support of the Appellant's assertion that the complainant's allegation was fabricated. *See Shelton v. State*, 841, S.W.2d 526 (Tex. App. – Fort Worth 1992, no pet.) Appellant had informed his attorney that he was set up because he had people removed from his apartment. (MNT, Def.'s Ex. 4.) He also sent a letter to the court informing the court of this information. (MNT, Def.'s Ex. 5.) Appellant had informed his attorney that Gabriale Cavitt, R.R., and Deanna Hoedzoade made up this allegation after the Defendant had the Houston Police Department come and remove Gabriale Cavitt and Deanna Hoedzoade from his residence and he had asked R.R. to go home. (MNT, Def.'s Ex. 4.) Appellant's theory of motive regarding the complainant's story was also reflected in his statement provided to the police and noted in the offense report. (MNT at 3.)

15

Dorothy Cavitt Lewis had informed Appellant's attorney, William Gifford, before the trial that Deanna Hoedzoade had personally told her that they lied to the police, she was on drugs, and they made all of this up. (MNT, Def.'s Ex. 6.) Deanna told Dorothy that she wanted to go to the police station to change her statement, but she was scared of getting in trouble. (MNT, Def.'s Ex. 6.) Dorothy Cavitt Lewis was never subpoenaed or requested to attend the trial. Dorothy Cavitt Lewis would have attended the trial if she was subpoenaed or requested to do so. (MNT, Def.'s Ex. 6.)

Additionally, Ja'Shone Collins wrote an affidavit for the defense on June 21, 2012. (MNT, Def.'s Ex. 7.) This affidavit was provided to defense counsel and was also in the State's file available under the Harris County District Attorney's open file policy. (MNT at 4.) In her affidavit she stated that her and some friends were at the Appellant's house. Raven was upset because Appellant would not take her home so she paired up with "Mr. Raymond's other enemies" and made R.R. say that when she woke up Appellant was on top of her. Later on in the week, R.R. told Ms. Collins that they made her say that because they were upset with Appellant. (MNT, Def.'s Ex. 7.) Counsel failed to subpoena Ja'Shone Collins to testify at the trial. (MNT at 4.)

In his affidavit, defense counsel stated that Ja'Shone Collins told his investigator that she was present and in bed with R.R., D.R., and Appellant. (MNT,

16

State's Ex. 1.) Since defense counsel believed it to be untruthful, he did not use her testimony.

Moreover, Jacquette Miller also wrote a statement for the defense. (MNT, Def.'s Ex. 8.) In her statement, she stated that when R.R. told her about what happened, Ms. Miller said she was going to call the police and told R.R. to call her mother. R.R. begged Ms. Miller not to call the police because R.R. was not really sure and her mother would not let her come around anymore. Ms. Miller also wrote that after this happened R.R. went to school the next day and then went back to Appellant's apartment and spent the night again. R.R. also kept changing her story about what happened. She told Ms. Miller she really did not know. This statement was written on January 13, 2012, and provided to defense counsel. The statement was also in the State's file that was available through the District Attorney's open file policy. (MNT at 5.) Jacquette Miller also provided a statement to the police. In her statement, which was also reflected in the offense report available to the defense under the District Attorney's open file policy, stated that on the night of the incident R.R. told her she did not know if Appellant had his clothes on. (*Id.*) R.R. told her she did not know who it was that did this to her. (*Id.*) Ms. Miller told R.R. she was going to call the police, but R.R. told her not to call the police because she would get in trouble with her mother. (*Id.*) R.R. then told her she did not know what happened. (*Id.*) She told R.R. to go home after school, but instead

R.R. went back to the Defendant's apartment. (*Id.*) R.R. spent the night at Appellant's and wore Appellant's clothes to school the next day. (*Id.*) Counsel failed to subpoena Jaquette Miller to testify at the trial. (*Id.*)

In his affidavit for the motion for new trial, defense counsel stated that Juanita Robicheaux told him that Jacquette Miller was a heavy drug user and could generally be found on a particular street corner and that no one had an actual address at which Jacquette Miller could be located. (MNT, State's Ex. 1.) He stated that based on his inability to locate her, and her credibility issues, he decided to proceed without her. (*Id.*) Although defense counsel stated that his investigator went to places that he was informed she could be found, he did not state how many times he went to these places and what places he went to.

Likewise, Clydell Adams would testify that R.R. was high on weed and she told people around the apartment that it was not the Defendant who did this to her. He also saw R.R. come back to the Defendant's apartment after this incident and stay at his apartment for the next two nights. (MNT, Exhibit 10.) This statement was provided to defense counsel prior to trial. The statement was also in the State's file that was available through the District Attorney's open file policy. Counsel failed to subpoena Clydell Adams to testify at the trial. (MNT at 5.)

Defense counsel stated that the reason he did not subpoena him to testify was because he was in jail, he had a criminal history, he did not want this imputed

on Appellant, and he believed he could elicit the same testimony from Gabriale Cavitt and D.R.. (MNT, State's Ex. 1.)

Makayla Wilburn also wrote a statement that R.R. changed her story. She also said that R.R. went back to stay at the Defendant's apartment and asked to wear his clothes. (MNT, Exhibit 9.) This statement was provided to defense counsel. The statement was also in the State's file that was available through the District Attorney's open file policy. Counsel failed to subpoena Makayla Wilburn to testify at the trial.

Defense counsel stated that he was aware of the statement given by Wilburn but he believed it was duplicative of other witness testimony and neither himself nor his investigator was able to locate her. Defense counsel fails to state what efforts either himself or his investigator took to locate her. Furthermore, testimony that R.R. would change her story was material to Appellant's defense.

Additionally, Juanita Robicheaux was sworn to return and was not present during the trial. (IV R.R. at 3-4.) At the beginning of the trial, defense counsel noted on the record that Juanita Robicheaux was a "critical, important witness" who left town for a month for work. Defense counsel had informed her that she needed to be present when he spoke to her the Friday before trial; however, she left town. (IV R.R. at 5.)

Defense counsel moved for a continuance in the interest of justice. (IV R.R. at 5.) Defense counsel stated that her testimony was "extremely important when it comes to the testimony of what the child did, what happened at that exact time, and who was present. And without that testimony, I can't get anyone else to say: I brought him to the house, let him off, he goes in the kitchen." (IV R.R. at 6.) The court denied Appellant's motion for continuance. (IV R.R. at 6.) The court later granted a short continuance during the trial until the following day. (V R.R. at 201.)

After the defense rested, defense counsel withdrew his motion for a continuance based on the fact that the witness was not present to testify. (VI R.R. at 74.) He withdrew his request for a continuance based on his opinion that other witnesses have covered what he believed Juanita Robicheaux would testify to. (VI R.R. at 74.) Defense counsel stated that all he believed Juanita Robicheaux would be able to testify to that was not already introduced at the trial was that "she was with Raymond all day and she's his caregiver. That's about it." (VI R.R. at 74.)

According to defense counsel's affidavit, he considered Juanita Robicheaux to be an important witness in the case. (MNT, State's Ex. 1.) He stated that he was concerned that the jury would blame Appellant if he were to ask for the case to be further delayed to get her into court and he was unable to give any kind of timeline as to when she might appear. (MNT, State's Ex. 1.)

20

Juanita Robicheaux was the Appellant's healthcare provider and is the mother of D.R. (MNT at 6.) Juanita Robicheaux provided a statement to the police that was also reflected in the offense report available under the District Attorney's open file policy. (*Id.*) According to Juanita Robicheaux's statement to the police, D.R. told her mother, Juanita Robicheaux, that R.R. was lying. (*Id.*) Juanita Robicheaux told R.R. to call the police the night of the incident and R.R. said she did not want to the call the police. (*Id.*) R.R. was mad because D.R. and R.R. got into an argument and that was when the police became involved. (*Id.*) According to the offense report, Juanita Robicheaux also signed a statement saying that R.R. kept changing her story. (*Id.*)

### F. Failing to elicit testimony to demonstrate a motive for R.R. to make up this allegation.

Gabriale and Dee Hoedzoade had a fight with Appellant and he made them move out of the house before this incident. (IV R.R. at 135; V R.R. at 52, 61-62.) Counsel failed to elicit testimony from Gabriale Cavitt that R.R., the complainant, told Gabriale Cavitt about three or four weeks after this alleged incident that she made this up because she was upset. Gabriale Cavitt had informed trial counsel of this information. Gabriale Cavitt testified during the trial, and would have testified to this information if the Defendant's attorney elicited it during her testimony. (MNT, Def.'s Ex. 6.)

Moreover, D.R. also wrote a statement for the defense. *See* (MNT, Def.'s Ex. 14.) In her statement she said R.R. was mad because the Appellant kept telling her that she needed to call her mother or he will take her home. D.R. also stated in an affidavit that Gabriale Cavitt and Deanna Jackson (also known as Deanna Hoedzoade) were mad at Appellant and told R.R. to get Appellant in trouble with this accusation. R.R. did not report it until she "got into it" with D.R. and that is when she reported this incident. (MNT, Def.'s Ex. 15.) Both her statement and her affidavit were provided to defense counsel and were in the State's file available for review under the Harris County District Attorney's open file policy. (MNT at 8.) D.R. testified at the trial. Counsel failed to elicit this information through her testimony at trial.

### G. Failing to object to inadmissible expert testimony regarding Appellant's likelihood of reoffending during the guilt-innocence stage of the trial.

Dr. Lawrence Thompson Jr. ("Thompson") testified for the defense. (IV R.R. at 173.) Thompson is employed with the Harris County Children's Assessment Center as the director of therapy and psychological services. (IV R.R. at 174.) During redirect examination, the State asked to approach the bench and informed the court at the bench that he wanted to "ask the witness about patterns of behavior with regard to people who reoffend in sexual abuse cases," and asked if there was any objection to it. (IV R.R. at 201.) Defense counsel's only concern, as

22

stated at the bench, was that he "couches it abuse as to what, an adult or a child whatever. Because if we have no report of any prior children, this is a child clinical psychologist." (IV R.R. at 201.) The State elicited testimony that some sex offenders have specific adults or children that they target, and that "hypothetically, an individual who targeted a 14-year-old and an 18-year-old female, would be within the type of general category that somebody might select?" (IV R.R. at 202-03.) To which, Thompson responded that essentially "it's not just the age that they may be attracted to, but what they look like." (IV R.R. at 204.) The prosecutor then went further and asked, "In your experience dealing with sex offenders or perpetrators of sexual abuse, is it common or uncommon for them to be a one-shot deal? Is it just usually one time they commit sexual abuse or is it typically a behavior issue?" (IV R.R. at 206.) Thompson responded, "I can say as to the extent that there is an inappropriate sexual attraction to children, that inappropriate sexual attraction is there and is an issue in an ongoing way. There's no cure for that inappropriate sexual attraction." (IV R.R. at 204.)

Under Texas Rule of Evidence 702, the trial court must find that the following three conditions are satisfied before admitting expert testimony: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the

23

trier of fact in deciding the case. Tex. R. Evid. 702. The trial court's determination regarding experts' qualifications and the admissibility of expert testimony is subject to an abuse of discretion standard. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App), *cert. denied* (1997).

Under Texas Rules of Evidence, Rule 403, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . " Tex. R. Evid. 403. Defense counsel was also ineffective for failing to object to this line of under Rule 403 since any probative value was substantially outweighed by the danger of unfair prejudice.

**H. Introducing testimony regarding Appellant's prior remote convictions and failing to obtain a ruling regarding the admissibility of Appellant's prior convictions.**

Eliciting testimony from the defendant as to his own prior convictions can be a matter of sound trial strategy, if the prior convictions are admissible. *Martin v. State*, 265 S.W.3d 435, 443 (Tex. App. – Houston [1st Dist.] 2007, no pet.); *Rodriguez v. State*, 129 S.W.3d 551, 558-59 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd). However, if prior convictions are inadmissible, there can be no reasonable trial strategy for introducing them before the jury. *Robertson v. State*, 187 S.W.3d 475, 485-86 (Tex. Crim. App. 2006). "The fact that a witness, including the accused, has been charged with an offense, is inadmissible for impeaching the witness's credibility unless the charge has resulted in a final

24

conviction for a felony or an offense involving moral turpitude, and even then *it must not be too remote.*" *Sinegal v. State,* 789 S.W.2d 383 (Tex. App. – Houston [1ˢᵗ Dist.] 1990, pet. ref'd) (citing *Alexander v. State*, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987).

Rule 609 provides that evidence of a witness's prior convictions is admissible for purposes of impeachment if the crime was a felony or a crime of moral turpitude and if the trial court determines its probative value outweighs its prejudicial effect. Tex. R. Evid. 609(a). However, a prior conviction is presumptively inadmissible for impeachment purposes if more than ten years have elapsed since the date of conviction or of the witnesses' release date from the confinement imposed for the prior conviction, whichever is later. The date of trial is the controlling time for computation because the purpose of admitting prior convictions at the guilt stage of the trial is to allow impeachment. *Sinegal*, 789 S.W.2d at 387.

The testimony elicited at trial is that Appellant was convicted of Accessory to Robbery in the early 1970s, Sexual Assault in 1989, and Forgery in 1986. (CR. At 35.) (V R.R. at 114.) These convictions were approximately 40, 24, and 27 years old respectively. Additionally, Appellant testified that he served eighteen to nineteen years on the accessory to robbery charge that he was convicted of in the early 1970s. (V R.R. at 114.) It is reasonable to assume that Appellant was

25

released before 1986, because that is when he was convicted of Forgery. Therefore, Appellant was released from confinement on his conviction of accessory to robbery approximately 27 years ago. Therefore his conviction was presumptively too remote to be admissible.

Furthermore, the State failed to list Appellant's prior conviction for Accessory to Robbery from the early 1970s in its notice of prior convictions and extraneous offenses that was filed on January 15, 2013. (C.R. at 67.) Therefore, counsel elicited harmful testimony that the State never sought to introduce, nor gave notice that it intended to introduce at trial.

Appellant testified that he was released after approximately serving six months on his conviction of Forgery in 1986. (V RR. At 116-17.) Therefore, it has been approximately 27 years since he was released from confinement on his charge of Forgery. Therefore his conviction was presumptively too remote to be admissible.

Moreover, Appellant testified that he was released after serving 16-and-half years or 17-and-a-half years on his conviction of sexual assault in 1989. Therefore, it has been approximately eight years since Appellant was released from confinement on his charge of sexual assault.

The Court of Criminal Appeals has set out a nonexclusive list of factors courts should use to weight the probative value of a conviction against its

26

prejudicial effect. *Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992). These include: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and charged offense; (4) the importance of the witness's testimony; and (5) the importance of the witness's credibility. *Id*. at 880. The proponent seeking to introduce Rule 609 evidence has the burden of showing that the probative value of a conviction outweighs its prejudicial effect. *Id*.

With respect to the first factor, the Court of Criminal Appeals has stated that crimes involving deception or moral turpitude have a higher impeachment value than crimes involving violence. *Id*. at 811. The impeachment value of his sexual assault conviction or his accessory to robbery conviction is low because the crimes do not necessarily involve deception. However, the charge of forgery could be found to involve deception.

The second *Theus* factor favors admission "if the past crime was recently committed and if the witness has demonstrated a propensity for breaking the law." *Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd). Appellant was convicted of Accessory to Robbery in the 1970s, Sexual Assault in 1989, Forgery in 1986. (CR. At 35.) These convictions were

approximately 40, 24 and 27 years old respectively. These convictions were too remote to be admissible.

Under the third *Theus* factor, similarity between a prior offense and the current offense weights against admissibility under Rule 609, whereas dissimilarity between the prior offense and the current offense favors admissibility. *Theus*, 845 S.W.2d at 881. "This is so because the admission for impeachment purposes of a crime similar to that charged presents a situation in which the jury could convict based on the perception of the past conduct rather than the facts of the present case. *Thomas v. State*, 312 S.W.3d at 732, 739-40 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd).

With respect to Appellant's prior conviction for forgery and accessory to robbery, the dissimilarity in the two offenses would weigh in favor of admissibility. However, Appellant's previous conviction for sexual assault and the present charge of sexual assault of a child include the same sexual assault elements and this similarity would weigh in favor of exclusion. Therefore, the third *Theus* factor favors admissibility of Appellant's prior conviction for forgery and accessory to robbery, but disfavors admissibility of Appellant's prior conviction for sexual assault.

Finally, under the fourth and fifth factors, the court is to consider the importance of appellant's testimony and his credibility. *Martin v. State*, 265

S.W.3d 435, 445 (Tex. App. – Houston [1ˢᵗ Dist.] 2007, no pet.). According to R.R.'s testimony, the only person awake at Appellant's apartment when this incident is alleged to have occurred was Appellant when she woke up during the alleged incident. Therefore, the jury's verdict on guilt or innocence depended almost entirely on its assessment of R.R.'s and Appellant's credibility.

There could be no reasonable basis for failing to have the court weigh these factors and make a ruling before admitting evidence of these convictions before the jury.

## I. Eliciting inadmissible facts regarding Appellant's prior convictions.

During the trial, defense counsel elicited potentially inadmissible facts regarding Appellant's prior convictions and his status as a registered sex offender.

| [Defense Counsel]: | Now, you went to the database and know that he was a sex offender? |
|---|---|
| [John Colburn]: | Yes, sir. (IV R.R. at 165.) |

and

| [Defense Counsel]: | Did you know Mr. Cavitt was in the penitentiary for about 34 years? |
|---|---|
| [Gabriale Cavitt]: | Yes, sir. (V R.R. at 110.) |

Defense counsel elicited further facts regarding Appellant's criminal history and the length of time Appellant spent incarcerated on his prior convictions, which would be inadmissible at the guilt-innocence stage of the trial.

29

| | |
|---|---|
| [Defense Counsel]: | The first time you went to prison was when, if you recall? |
| [Appellant]: | In the early, early '70s. |
| [Defense Counsel]: | What was that for? |
| [Appellant]: | Accessory to robbery. |
| [Defense Counsel]: | Accessory to robbery. All right. How long did you stay in prison that time. |
| [Appellant]: | Twenty—eighteen, nineteen years, something like that. A long time. |
| [Defense Counsel]: | Okay. Eighteen to nineteen years? |
| [Appellant]: | Yes, sir. (V R.R. at 114.) |
| [Defense Counsel]: | Sure. Okay. And then you messed up again and went to prison; is that correct[?] |
| [Appellant]: | Yes, sir. |
| [Defense Counsel]: | When was that? |
| [Appellant]: | I think it was '86. |
| [Defense Counsel]: | 1986. What was that for? |
| [Appellant]: | I had got a forgery by passing check case. |
| [Defense Counsel]: | So, you had a forgery in there. How long were you in prison that time. |
| [Appellant]: | I was in there – I think like maybe six months or seven months because it got reversed. |

30

| | |
|---|---|
| [Defense Counsel]: | Okay. So, you don't have a conviction for that as far as you know? |
| [Appellant]: | No, not as far as I know. |
| [Defense Counsel]: | Now, did you then go to prison again? |
| [Appellant]: | Yes, sir. |
| [Defense Counsel]: | When was that? |
| [Appellant]: | I don't remember what year it was. |
| [Defense Counsel]: | Okay. And what was that for? |
| [Appellant]: | Sexual assault. |
| [Defense Counsel]: | Sexual assault? |
| [Appellant]: | Right. |
| [Defense Counsel]: | How long were in prison that time? |
| [Appellant]: | I would say it was 16-and-a-half-years or 17-and-a-half years. |
| [Defense Counsel]: | All right. So how many total years have you been in prison. |
| [Appellant]: | Thirty-five and one-half years. (V RR. At 116-17.) |

Generally, even though prior conviction may be admissible, details of that conviction are not. *Lape v. State*, 893 S.W.2d 949 (Tex. App. – Houston [14th Dist.], pet ref'd.); *Jabari v. State*, 273 S.W.3d 745 (Tex. App. – Houston [1st Dist. 2008, no pet.). The information elicited by defense counsel would have been

31

inadmissible, and this information impacted his right to a fair trial and his presumption of innocence.

**J. Failing to object to the State's questioning of Appellant regarding details of his previous sexual assault conviction.**

Trial counsel failed to object to inadmissible details regarding Appellant's prior conviction for sexual assault.

| [Prosecutor]: | The case that you plead guilty to back in 1988 involved a complaining witness who was a female, right? |
|---|---|
| [Appellant]: | 1988, yes, sir. |
| [Prosecutor]: | The prior sexual assault. She was 18 years old, right? |
| [Appellant]: | Yes, sir. |
| [Prosecutor]: | And you said you pled to that and got 18 years and you finished that up around 2005, 2006? |
| [Appellant]: | Yes, sir. (V R.R. at 187.) |

As stated above, *supra*, Generally, even though prior conviction may be admissible, details of that conviction are not. *Lape v. State*, 893 S.W.2d 949 (Tex. App. – Houston [14th Dist.], pet ref'd.); *Jabari v. State*, 273 S.W.3d 745 (Tex. App. – Houston [1st Dist. 2008, no pet.). The harmful effect of this testimony was exacerbated by Dr. Lawrence Thompson Jr.'s testimony regarding attraction to children of a certain age. (IV R.R. at 202-03.) There could not be a valid

strategically reason for failing to object to the prosecutor's question eliciting inadmissible and harmful information.

**K. Harm**

Appellant was harmed based on the attorney's ineffective assistance since he was denied the presumption of innocence by trial counsel commenting on his lengthy pretrial incarceration, his lengthy criminal history and venireperson 39 was placed on the jury who stated that he would have trouble finding appellant credible when he has a prior similar crime. Moreover, he was denied a fair trial by counsel's failure to secure the presence of material witnesses to testify at trial in his defense, his counsel's failure to elicit testimony regarding R.R.'s motive to make up this allegation from the witnesses who did testify, his counsel's failure to object to inadmissible expert testimony regarding appellant's likelihood of reoffending during the guilt-innocence stage of trial, his trial counsel's introduction of his prior convictions without a ruling as to their admissibility, his trial counsel eliciting facts regarding Appellant's prior convictions and failing to object to the State's introduction of facts regarding his prior convictions. Additionally, Appellant was harmed as a result of counsel's failure to advise him of the disadvantages of testifying since his prior criminal history was revealed.

**Issue Two: The trial court erred in denying Appellant's motion for a speedy trial.**

Appellant hereby incorporates by reference the Statement of Facts portion of this brief as set forth at 3-8, *supra.*

A defendant does not have the right to hybrid representation. *Robinson v. State*, 240 S.W.3d 919 (Tex. Crim. App. 2007). A trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel. *Id.* However, once a trial court actually rules on a *pro se* motion, that ruling is subject to appellate review. *Id.* at 922. Additionally, defense counsel adopted all of the pros se motions filed by Appellant. (V R.R. at 184.)

The defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right. Appellant filed a *pro se* motion for a speedy trial on August 19, 2013. (MNT, Def.'s Ex. 20.) The Defendant was incarcerated on this charge on April 3, 2012. At that point the Defendant had already been incarcerated for over one year and four months. The trial court denied this motion on August 21, 2013. (MNT, Def.'s Ex. 20.)

The court is to analyze a speedy trial decision by looking at four specific factors laid out by *Barker v. Wingo*: (1) whether the delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more

to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as the delay's result. *Zamaro v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002)(en banc)(citing citing *Barker v. Wingo*, 407 U.S. 515 (1970)). The courts "must analyze federal constitutional claims by first weighing the strength of the above factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Id*. at 648 (*Barker v. Wingo*, 407 U.S. at 530).

The first factor is the length of the delay. *Id.* "The length of the delay between an initial charge and trial (or the defendant's demand for a speedy trial) acts as a 'triggering mechanism'" *Id*. In *Harris v. State*, the Texas Court of Criminal Appeals recognized that a delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis. 827 S.W.2d 949 (Tex. Crim. App. 1992)(en banc). Therefore, in the instant case, the delay of over one year and four months before the Defendant filed the motion for speedy trial triggered a speedy trial analysis and this factor weights against the State.

The second factor is the reason for the delay. Where the record is silent regarding the reason for the delay this factor weighs against the State. *Zamaro v. State*, 84 S.W.3d at 650.

The third factor is assertion of the right. The defendant has no duty to bring himself to trial; that is the State's duty. *Id*. at 651. However, "the defendant's

35

assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. This factor weights in the defendant's favor.

The final factor is prejudice caused by the delay. "'Prejudice of course, should be assessed in light of the interests of defendants which the speedy trial right was designed to protect.' The Supreme Court has identified three such interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that he defense will be impaired. Although the last type of prejudice is the most serious, a defendant's claim of a speedy trial violation need not necessarily demonstrate prejudice to his ability to present defensive matters." *Id.* at 652.

In this case, Appellant informed the court in his motion for speedy trial that he has lost one or more witnesses because they moved and he no longer has an address for them. Additionally, Appellant sent numerous letters to the court informing the court that he was dying from his numerous ailments, which brought anxiety and concern to Appellant since his access to medical care was limited and he was spending his limited time remaining awaiting trial. These letters also show Appellant's anxiety and concern while incarcerated. Appellant also stated in a couple of the letters to the trial court that he is not receiving the right treatment and

medication in jail. (MNT, Def.'s Ex. 5, 12, 17, 20.) These factors weight in favor of Appellant.

Therefore, Appellant's right to a speedy trial was violated, and the trial court erred in denying the Appellant's motion for a speedy trial.

**Issue Three: The trial court erred by failing to grant an evidentiary hearing on the Motion for New Trial.**

Appellant hereby incorporates by reference the Statement of Facts portion of this brief as set forth at 3-8, *supra.*

Because Appellant's motion for new trial was supported by affidavit, raised matters outside of the record, and was timely filed and presented to this Court, Appellant was entitled to an evidentiary hearing. *See Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). Failure to conduct an evidentiary hearing was an abuse of the trial court's discretion. *Id*.

Appellant's motion for new trial, supported by his affidavit, was filed in a timely manner. The motion raised matters not determinable from the record, namely that counsel was ineffective regarding matters outside of the trial transcript. Because appellant's motion for new trial raised matters not determinable from the record upon which he could be entitled to relief, the trial judge abused his discretion in failing to hold a hearing. *Id*. Therefore, if the judgment is not reversed and remanded for a new trial based on the sworn affidavits and information in the

Motion for New Trial, the cause should be remanded to the trial court for a hearing on appellant's Motion for New Trial. *See id.*

**Issue Four: The trial court erred by bringing a material defense witness, D.R. into the courtroom, handcuffed, and in a jail uniform.**

Appellant hereby incorporates by reference the Statement of Facts portion of this brief as set forth at 3-8, *supra.*

"[P]ossible prejudice to a defendant should be avoided unless there are sufficient reasons to have his witness appear handcuffed and in jail clothing." *Thompson v. State*, 514 S.W.2d 275 (Tex. Crim. App. 1974). The test on appeal is whether the trial court abused its discretion in requiring the witness to appear in jail uniform and handcuffed. *Id*. at 278. To enable the appellate court to review the trial court's action on appeal, "the record should contain the factual matters on which the trial court's discretion was based. It must appear in the record that in exercise of its discretion the trial court had a fair knowledge and understanding of all such factual matters." *Id*. In this case, a material defense witness, D.R., was brought into the courtroom in a jail uniform with handcuffs on her wrists and shackles on her ankles. The handcuffs were removed from her wrists prior to her testimony after the jury had already observed the handcuffs on the witness. However, Ms. D.R. remained shackled at the ankles even during her testimony on behalf of the defendant. This undoubtedly prejudiced her credibility with the jury

and thereby prejudiced the defendant's trial. The trial court abused its discretion and a new trial should be ordered.

**Issue Five: A new trial should be granted based on newly discovered evidence.**

Appellant hereby incorporates by reference the Statement of Facts portion of this brief as set forth at 3-8, *supra.*

In order to grant a new trial based on newly discovered evidence the record must reflect that: (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Eddlemon v. State*, 591 S.W.2d 847, 849 (Tex. Crim. App. 1979)(Panel No. 3).

In the instant case, Deanna Hoedzoade informed Laverne Cavitt White after the trial that she wanted to change her statement to the police. She wanted to give a statement that they did not expect that it would go this far and that the allegation was not true. (MNT at 14.) This evidence was not available prior to the trial, this evidence would be admissible to impeach R.R.'s testimony if Deanna Hoedzoade

assisted R.R. in fabricating this story, and this evidence would probably bring about a different result on another trial.

## PRAYER

FOR THESE REASONS, Appellant respectfully prays that this Honorable Court reverse the trial court's judgment of conviction and remand the case for a new trial, or in the alternative, remanded to the trial court for an evidentiary hearing on the motion for new trial, and for any other appropriate remedy.

Respectfully submitted,

*/s/ Nicole DeBorde*
NICOLE DEBORDE
TBA No. 00787344
Bires Schaffer & DeBorde
JPMorgan Chase Bank Building
712 Main Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 228-8500
Facsimile: (713) 228-0034

**COUNSEL FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9 of the Texas Rules of Appellant Procedure, the undersigned counsel of record certifies that Appellant's brief contains 8,937 words.


*/s/ Nicole DeBorde*
NICOLE DEBORDE

**CERTIFICATE OF SERVICE**

I certify that a copy of this Brief for Appellant has been served upon the Harris County District Attorney's Office – Appellate Section, on this 20th day of March by leaving a copy with the Clerk of the this Court pursuant to local practice.

/s/ Nicole DeBorde
NICOLE DEBORDE